IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCEACHIN,                  :        CIVIL ACTION
                                  :
                Plaintiff         :
                                  :
        v.                        :
                                  :
JEFFREY BEARD, et al.,            :
                                  :
                Defendants        :        No. 02-04691

## ORDER

AND NOW, this        day of              2003, it is ORDERED that the motion of

defendants Beard, Hatcher, and Swenski to dismiss is GRANTED.  This action is

DISMISSED.

BY THE COURT:

_____
EDUARDO C. ROBRENO,    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS MCEACHIN, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| | : | |
| Defendants | : | No. 02-04691 |

## <u>MOTION OF DEFENDANTS BEARD, HATCHER, AND SWENSKI TO DISMISS</u>

Defendants Jeffrey A. Beard, Leslie Hatcher and Sergeant Swenski move the Court pursuant to 42 U.S.C. §1997e(a), 42 U.S.C. §1997e(c), and Fed.R.Civ.P. 12(b)(6) to dismiss Plaintiff Thomas McEachin's complaint for failure to state a claim upon which relief may be granted.  The action should be dismissed for the following reasons:

1.  Plaintiff has failed to exhaust his administrative remedies as mandated by 42 U.S.C. 1997e(a).

2.  Administrative remedies satisfy any due process Plaintiff is entitled to.

3.  In their official capacities, defendants Beard, Hatcher, and Swenski are protected from damages suits by virtue of the Eleventh Amendment and the "person" requirement of 42 U.S.C. § 1983.

4.  Plaintiff's Complaint fails to raise any claims for prospective injunctive relief.

5.  Beard was not personally involved in any of the alleged violations of Plaintiff's civil rights.

This motion is supported by the attached memorandum of law.


WHEREFORE, defendants Beard, Hatcher, and Swenski pray for an order dismissing Plaintiff's claims against them and affording such further relief as is just and proper.


D. MICHAEL FISHER
ATTORNEY GENERAL


BY:     s/  Kevin Bradford
Kevin R. Bradford
Deputy Attorney General
Identification No. 88576

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section


OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS MCEACHIN, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| | : | |
| Defendants | : | No. 02-04691 |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OF DEFENDANTS BEARD, HATCHER, AND SWENSKI**

**I.    INTRODUCTION**

Plaintiff, Thomas McEachin, an inmate of the State Correctional Institution at Albion,

Pennsylvania ("SCI Albion"), brings this cause of action pursuant to 42 U.S.C. § 1983, alleging

that the defendants violated Plaintiff's civil rights.  Defendants Jeffrey A. Beard, Secretary of the

Pennsylvania Department of Corrections (the "DOC"), Leslie Hatcher, Grievance Coordinator of

SCI Graterford, and Sergeant Joseph Swenski of the State Correctional Institution at Camp Hill

("SCI Camp Hill") move to dismiss the claims against them.[1]

**II.    RELEVANT FACTUAL ALLEGATIONS**

For the purposes of this motion only, Plaintiff's allegations must be taken as true.

---

[1]Plaintiff originally commenced this action as a Writ of Mandamus, naming Beard, Swenski,
Donald Vaughn (Superintendent of SCI Graterford) and the DOC as defendants.  This Court
dismissed the Writ for lack of subject matter jurisdiction, granting leave to Plaintiff to re-file this
action as a § 1983 action.  When Plaintiff eventually did so, he did not include Vaughn and the
DOC as defendants, but added Hatcher.  These changes are noted by this Court's June 27, 2003
order and the current docket.

Plaintiff, an inmate currently incarcerated at SCI Albion, complains about two separate incidents involving his personal property while in DOC custody.

The first incident involves Plaintiff's watch. On September 5, 2001, while being prepared for transport from SCI Graterford to another state correctional institution, Plaintiff was required to turn his watch over to unnamed prison officials and given a "confiscation slip" documenting this action. Complaint, § V, ¶ 1. This slip was placed with the rest of Plaintiff's property. Id. Plaintiff did not re-obtain his personal property, including the confiscation slip, until November 15, 2001, while at SCI Camp Hill. Id. at ¶ 2. Apparently the watch itself was not with the rest of Plaintiff's personal property.

At some point after November 15, 2001, Plaintiff contacted "staff" at SCI Graterford regarding his watch, but never received a response. Id. On December 17, 2001, Plaintiff filed a grievance regarding the watch with the SCI Graterford Grievance Coordinator, defendant Hatcher. Id. See also Exhibit D-1.[2] The grievance was rejected as untimely. Id. See also Exh. D-2. Subsequently, Plaintiff wrote a letter to the DOC Secretary (defendant Beard) and the DOC Chief Grievance Coordinator about the watch and rejection of the grievance. Id. at ¶ 3. See also Exh. D-3. Plaintiff received a response in the form of a letter from the DOC Secretary's Office

---

[2]     When considering a motion to dismiss, the Court may rely only on the pleadings. However, documents attached to a defendant's motion to dismiss, which are referred to in the complaint, are considered part of the pleadings and, therefore, may also be relied on by the Court. See Pryor v. National Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002). Plaintiff refers to numerous documents in his Complaint, but fails to attach copies of them. For the sake of clarity and completeness, documents referred to in the Complaint that are in possession of the DOC, will be attached as exhibits to the instant motion.

Pursuant to Federal Rule of Civil Procedure 12(b), the Court may choose to convert a motion to dismiss, that contains matters outside the pleadings, into a motion for summary judgment. This remains true even if the defendants have yet to answer the complaint. See HS Resources, Inc. v. Wingate, 327 F.3d 432, 440 (5th Cir. 2003) ("[A]n answer is not a prerequisite to the consideration of a motion for summary judgment.").

of Inmate Grievances and Appeals, which noted that Plaintiff's letter was filed without action due to his failure to comply with the proper grievance procedure, as outlined by DOC policy DC-ADM 804. Id. *See also* Exh. D-4. The letter also explained that an appeal to the Secretary's Office of Inmate Grievances and Appeals, the highest level of appeal for grievances, requires proper documentation of the grievance itself and all lower-level reviews/appeals. Exh. D-4. Despite this instruction, it appears that Plaintiff made no subsequent efforts to utilize the DOC grievance procedure regarding his watch.

The second incident is described in Plaintiff's Complaint with little detail. On November 17, 2001, while incarcerated at SCI Camp Hill, Sergeant Swenski confiscated some of Plaintiff's property. Id. at ¶ 4. Plaintiff states that Swenski destroyed the property before "the hearing" in violation of the DOC procedure regarding Inmate Discipline, DC-ADM 801. Id. "The hearing" Plaintiff refers to is the misconduct hearing he had on November 27, 2001 for being in possession of personal property in excess of the limits set by DOC policy (contraband); an offense he was eventually found guilty of. *See* Exh. D-5. The misconduct report notes that Plaintiff's excess property was "stored on Block" pending final disposition of the misconduct. *See* Exh. D-5. Following unsuccessful administrative appeals of the misconduct to three levels, including the final level of appeal to the DOC Chief Hearing Officer (*see* Exhs. D-6 to D-8), Plaintiff wrote to the DOC Secretary, defendant Beard, who did not respond to Plaintiff. Complaint, § V., ¶ 5. Plaintiff's Complaint makes no mention of any grievance filed regarding the contraband.

III.   **ARGUMENT**

   **A.  Standard applicable to motion to dismiss.**

   In deciding a motion to dismiss, the Court must accept all material factual allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  However, the Court need not credit broad conclusions unsupported by the factual allegations.  Morse v. Lower Merion School District, 132 F.3d 902, 908, 909 (3d Cir. 1997); Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23, 24 (1st Cir. 1990); The Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989).  If the facts alleged in the complaint, and inferences and implications reasonably proceeding from them, cannot entitle the plaintiff to any relief as a matter of law, the complaint should be dismissed for failure to state a claim upon which relief may be granted.  Gomez v. Toledo, 446 U.S. 635, 636 (1980).

   **B.  Plaintiff has failed to exhaust his administrative remedies.**

   Pursuant to the Prison Litigation Reform Act of 1995, inmates must exhaust administrative remedies before bringing civil rights claims in federal court.  Specifically, this exhaustion provision reads as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  This hurdle to prisoner civil rights cases is an affirmative defense and, under appropriate circumstances, may be raised as a basis for a motion to dismiss.  Brown v.

- 4 -

Croak, 312 F.3d 109, 111 (3d Cir. 2002).  The question of whether the administrative remedies are available is one of law.  Id.[3]

Section 1997e(a) has been broadly applied by the courts and has not been interpreted to include any exceptions.  The provision has a wide scope as it applies to all types of suits brought by inmates about prison life, regardless of the circumstances or the particular right being infringed upon.  Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore, the provision mandates inmate-plaintiffs to exhaust administrative remedies, even if such action would clearly be futile.  Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000) (no futility exception in § 1997e(a)).  There is no discretion for the district court to excuse the failure to exhaust.  Porter, 534 U.S. at 524.  These interpretations are consistent with the purpose of the statute which is "to reduce the quantity and improve the quality of prisoner suits."  Id. at 524-525.

As the statute's plain wording reads, the prisoner must exhaust "available" administrative remedies.  42 U.S.C. § 1997e(a).  If administrative remedies are unavailable, exhaustion of these remedies is, of course, not possible.  Logically, § 1997e(a) does not require exhaustion when the remedies are unavailable to a particular inmate.  As noted, the "availability" of administrative remedies is a question of law.  Brown, 312 F.3d at 111.

The Supreme Court addressed the meaning of "available" in Booth v. Churner, 532 U.S. 731 (2001).  In Booth, a case which arose from the Third Circuit, the Court found that "available" meant the ability for the administrative proceeding to provide some type of remedy, even if it is impossible for the proceeding to provide the exact type of relief sought by the plaintiff (such as monetary damages).

---

[3] Where § 1997e(a) is the basis for the motion to dismiss, the exact burden of proof defendants must carry is unclear.  See Brown, 312 F.3d at 111 n.1.

The Court noted two practical reasons for considering administrative remedies "available," despite their apparent inability to resolve the issue. First, although an inmate may originally be seeking a certain form of relief, it is possible that the grievance procedure could produce an alternative resolution that would satisfy the inmate. Id. at 737. Second, the administrative proceedings would, at a minimum, somewhat clarify the factual scenario by the time the matter reaches the court system. Id. Administrative remedies have the effect of reducing the overall volume of inmate litigation, as well as the amount of time spent by the courts resolving the issues in those disputes that do make it to court.

Courts have found administrative remedies unavailable in limited circumstances, such as where prison officials have actively prevented an inmate from properly raising issues through the grievance system. For example, where an inmate's request for a grievance form was denied by prison officials, administrative remedies were sufficiently unavailable. Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003). Likewise, where prison officials incorrectly told an inmate that he could not file a grievance because an investigation of the incident was ongoing, administrative remedies were unavailable. Brown, 312 F.3d 109. Absent misdirection or other interference by prison officials, administrative remedies are generally available.

Another court of this district recently found that an inmate's allegation that an institution failed to respond to an initial grievance does not make administrative remedies unavailable. Harvey v. City of Philadelphia, No. 00-4879, 2003 WL 1618096, at *3 (E.D.Pa. March 27, 2003). The Harvey court held that, even if the inmate's allegations were true, he still had other alternatives, as outlined in the prison handbook, and thus administrative remedies were still available. Id. The court noted that the non-response of prison officials to one grievance is quite

different than the situation in <u>Brown</u>, *supra*, where prison officials essentially denied the inmate access to all administrative processes.

Courts have also rejected the argument that an inmate *substantially complied* with the administrative procedures by commencing, but not completing the grievance process, prior to bringing suit.  <u>Jernigan v. Stuchell</u>, 304 F.3d 1030, 1032 (10th Cir. 2002); <u>Wright v. Hollingsworth</u>, 260 F.3d 357, 358 (5th Cir. 2001).

The instant Plaintiff has not exhausted his administrative remedies regarding the missing watch.  After Plaintiff submitted the initial grievance to defendant Hatcher, he <u>did</u> receive a response informing him that the grievance was untimely.  Complaint, § V., ¶ 2.  *See also* Exhs. D-1, D-2.  Plaintiff's next action was to write a letter to the DOC Secretary and Chief Grievance Officer regarding the grievance.  This action did not comply with grievance procedures as outlined by DC-ADM 804. Exh. D-9.

The version of DC-ADM 804 in effect at the time explains that, following the Initial Review, any appeal must be directed to the Facility Manager (Superintendent) of the Institution.  <u>Id.</u> at § VI., C.  Only after final disposition of this level of review, may the inmate further appeal to the DOC Secretary's Office of Inmate Grievances or Appeals.  <u>Id.</u> at § VI., D.  Even if Plaintiff had trouble understanding this policy, the response he received to his letter (from the DOC Secretary's Office of Inmate Grievances and Appeals), which in simple terms explained the proper procedure, should have eliminated any confusion.  Exh. D-4.

However, Plaintiff took no further action, despite the guidance provided.  Instead of appealing the Initial Review (rejection of grievance) to SCI Graterford's Superintendent, as instructed, Plaintiff simply filed the instant lawsuit, baldly asserting that the defendants denied him access to the grievance procedure.  This claim is simply not true.  Plaintiff's own failure to

comply with the DOC grievance procedure denied his access to the procedure, not the actions of any of the defendants.  Plaintiff has had, and continues to have the ability to appeal defendant Hatcher's initial ruling to the Superintendent of SCI Graterford.  The futility of such an appeal, due to time constraints or any other reasons, does not excuse Plaintiff's failure to exhaust.  *See* Nyhuis, 204 F.3d at 71.

Plaintiff also has not exhausted his administrative options for the alleged taking of his excess property ("contraband") while at SCI Camp Hill.  Although Plaintiff did participate in a misconduct hearing regarding the contraband and fully appealed that ruling, he has not alleged that he filed any grievance regarding the contraband.

The fact that Plaintiff had a *misconduct* hearing does not excuse his duty under § 1997e(a) to file a *grievance* on the issue, even if it would address the same conduct that was the subject of the misconduct.  *See, e.g.,* Benjamin v. Goord, No. 02-CIV-1703, 2002 WL 1586880, at *2 (S.D.N.Y. Jul. 17, 2002) ("Exhausting appeals of a disciplinary hearing determination does not constitute exhausting administrative remedies for his grievance, even if the underlying facts are the same.").  Plaintiff's failure to file a grievance means that he has failed to exhaust all of his administrative options on this issue.  As stated, there is no futility exception.  *See* Nyhuis, 204 F.3d at 71.

Plaintiff should not be rewarded for his deliberate refusal to properly use the grievance procedure by allowing his actions to meet the exhaustion requirement of 1997e(a).  Such a ruling would create a simple loophole for litigious inmates and trivialize the Supreme Court's holdings in Booth and Porter that exhaustion of administrative remedies is now mandatory.

Since Plaintiff has not exhausted his administrative remedies as mandated by § 1997e(a), the Complaint should be dismissed.  Exhaustion is a precondition to suit and cannot be cured by

exhausting administrative remedies while the suit is pending.  *See* Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

### C.  The DOC administrative proceedings provide due process

Plaintiff alleges that, on two occasions, property was taken from him without due process in violation of the Fourteenth Amendment. The Fourteenth Amendment Due Process clause encompasses two types of due process, substantive and procedural.  Since Plaintiff does not clarify which type he alleges was violated by the deprivations, both will be addressed.[4]

### 1.  Procedural Due Process

Procedural due process guarantees that the state will not deprive someone of a protected interest in life, liberty, or property without due process of law.  Parrat v. Taylor, 451 U.S. 527, 537 (1981), *overruled on other grds.*, Daniels v. Williams, 474 U.S. 327 (1986).  The deprivation itself is not a violation of procedural due process.  Zinermon v. Burch, 494 U.S. 113, 126 (1990). The violation occurs when the deprivation was made without fair procedure.  Id.

It is well established that, "due process…is a flexible concept that varies with the particular situation."  Id. at 127.  The Supreme Court has held that where prisoners are deprived

---

[4]      In addition to the Fourteenth Amendment violation, Plaintiff has alleged a violation of his Fifth Amendment rights (*see* Complaint, § V, ¶¶ 3, 5), also presumably based upon a due process violation.  Since the analysis of a due process claim is the same, regardless of whether brought under the Fifth or Fourteenth amendment, they will not be addressed separately.  *See* Lebowitz v. Forbes Leasing & Finance Corp., 326 F.Supp. 1335, 1354 (E.D.Pa. 1971), *aff'd,* 456 F.2d 979 (3d Cir. 1972), *cert. denied*, 409 U.S. 843 (1972).

Plaintiff has also alleged a violation of his First Amendment rights, without explaining the basis for such a claim.  Complaint, § V, ¶ 3.  Since this claim is made in the portion of his complaint describing the loss of his watch, it is possible he is arguing that the alleged denial of his access to the DOC grievance procedure is a violation of this amendment.  However, as discussed in § B, above, the grievance system was in fact available to Plaintiff, but he did not follow the proper steps.  In any event, "prisoners do not have a constitutional right to a prison grievance procedure."  Anderson v. Horn, No. 95-6582, 1996 WL 266109, at *2 (E.D.Pa. May 17, 1996).

of personal property, meaningful post-deprivation remedies provide sufficient due process. Parrat, 451 U.S. at 544; Hudson v. Palmer, 468 U.S. 517, 532 (1984).  In Parrat, prison officials misplaced the inmate-plaintiff's "hobby kit" which he had ordered and had sent to the prison. 451 U.S. at 530. The Court held that where *negligent* actions of state actors result in the deprivation of property, due process is nonetheless provided by meaningful post-deprivation remedies.  Id. at 543-544.

In Hudson, the Supreme Court expanded its holding in Parrat to apply to *intentional* deprivations of inmate's property by prison officials.  Hudson, 468 U.S. at 533.  The Court has reasoned that, in either situation, requiring a pre-deprivation hearing would be absurd since it would be impossible to determine exactly when a negligent or intentional deprivation of property would occur.  Zinermon, 494 U.S. at 137 (*discussing* Parrat, Hudson).  It should be noted that these principles only apply where the deprivation of property is the result of a random or unauthorized act and not pursuant to an established state procedure.  Hudson, 468 U.S. at 532.

The Courts of this Circuit have consistently held that the DOC's prison grievance procedure provides an adequate post-deprivation of property remedy.  Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000); Allah v. Al-Hafeez, 208 F.Supp.2d 520, 536-537 (E.D.Pa. 2002); Pritchard v. Ridge, No. 96-4356, 1997 WL 907564, at *2 (E.D.Pa. Jul. 7, 1997); Rogers v. Brown, No. 95-7867, 1996 WL 608473, at *2 (E.D.Pa. Oct. 24, 1996).  The existence of this available post-deprivation remedy forecloses any due process claim.  Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa. 1995).  The fact that an inmate is dissatisfied with the

result of these proceedings does not affect their adequacy as a post-deprivation remedy. <u>Isley v. Horn</u>, No. 95-5389, 1996 WL 510090, at *6 (E.D.Pa. Sep. 3, 1996).[5]

In the instant matter, there are two separate incidents which Plaintiff appears to allege were deprivations of property by state officials without due process. In both instances Plaintiff's argument fails when he attempts argue that he did not receive due process.

Plaintiff's procedural due process rights have not been violated by the deprivation of the watch. Plaintiff's watch was taken from Plaintiff in the course of his being transferred from SCI Graterford to another institution and apparently was misplaced in the course of the transfer. Complaint, § V, ¶ 1. The deprivation, whether accidental or intentional, was not alleged to have occurred as a result of some established state procedure. Adequate post-deprivation remedies will therefore satisfy due process.

The DOC grievance procedure, which Plaintiff is aware of (*see* Complaint, § IV.), was, and remains available to him. The existence of this procedure provides Plaintiff with sufficient due process. <u>Tillman</u>, 221 F.3d at 422. Although Plaintiff alleges the grievance procedure was not available to him, as explained in §B, above, it was in fact available, but Plaintiff failed to properly utilize the system. Plaintiff's failure to properly follow the grievance procedure does not mean that he was denied due process. <u>Id.</u>

---

[5] Although a state tort claim would also provide adequate post-deprivation proceedings, the defendants, all of whom were state officials acting within the scope of their employment, would be protected from such a claim by the sovereign immunity enjoyed by Commonwealth of Pennsylvania actors. 1 Pa.C.S. § 2310. While there is an exception to this immunity for damages resulting from the Commonwealth's possession of personal property, 42 P.S. § 8522(b)(3), this exception is limited to situations where the property itself caused the injury. <u>Isley</u>, 1996 WL 510090, at *6. Plaintiff has alleged that his injury resulted from the Commonwealth's care of his property, not the property itself. Thus the exception is inapplicable.

The second incident involving the contraband does not demonstrate a due process violation for at least two reasons. First, there is no protected property interest involved. An inmate cannot claim to have a property interest in items that are contraband. Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984).

Second, if Plaintiff did have a protected interest in contraband, he has received all the process due regarding the deprivation of this contraband while at SCI Camp Hill. Plaintiff bases his due process argument on the alleged fact that Swenski intentionally destroyed of Plaintiff's property *prior* to his initial misconduct hearing, in violation of DOC regulations. Complaint, § V, ¶ 4. Since Swenski was acting contrary to established state procedures, Plaintiff's due process rights are preserved by available post-deprivation remedies.

Plaintiff's due process came in the form of a misconduct hearing relating to the incident and appeals of that hearing. *See* Exh. D-5. Although DOC misconduct proceedings are a slightly different type of administrative proceeding than grievance proceedings, they may provide due process for a deprivation of property. DOC misconduct hearings provide due process for the deprivation of *liberty* so long as the subject received notice of the proceeding and was afforded an opportunity to be heard. *See* Smith v. Messinger, 293 F.3d 641 (3d Cir. 2002). It follows that if these same requirements are met, misconduct procedures also provide due process for deprivations of *property*.

Plaintiff does not argue and cannot argue that he was denied access to this administrative procedure. *See* Exhs. D-5 to D-8. Plaintiff attended the initial misconduct hearing and was provided with an opportunity to present his arguments regarding the contraband. See Exh. D-5. Subsequently, he appealed the decision all the way up to the DOC's Chief Grievance Officer, receiving a response at each level. See Exhs. D-6 to D-8.

Even if the misconduct proceedings do not adequately provide due process for the deprivation of property (a point not conceded), Plaintiff still has the grievance procedure at his disposal.  As noted above, it is well-established that the DOC's Grievance procedure provides adequate due process for deprivations of property.  Plaintiff has failed to even attempt to use this medium to challenge the deprivation of his contraband.  The existence of this procedure is all that is required to satisfy due process.  Austin, 893 F.Supp. at 454.

## 2. Substantive Due Process

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'"  Zinermon, 494 U.S. 113, 125 (quoting Daniels v. Williams, 474 U.S. 327, 331 (1986)).  To show that discretionary executive action, like that of a prison official, has violated substantive due process rights, there must be a showing that the action taken "shocks the conscience."  United Artists Theatre Circuit, Inc. v. The Township of Warrington, PA, 316 F3d 392 (3d Cir. 2003).

The deprivations of the instant Plaintiff's property are far from "conscience shocking."  Plaintiff's watch was taken from Plaintiff in the course of his being transferred from SCI Graterford to another institution and apparently was misplaced in the course of the transfer.  Complaint, § V, ¶ 1.  If Plaintiff ever properly utilizes the DOC grievance system, it is quite possible that DOC officials may be able to locate the watch.  Even if the watch cannot be located, the accidental deprivation of one item of Plaintiff's property in the course of a transfer cannot be considered conscience-shocking activity.

The deprivation of Plaintiff's contraband is even less shocking to the conscience.  Regulations reasonably related to a legitimate penological interest pass Constitutional muster.

Sutton v. Rasheed, 323 F.3d 236, 252 (3d Cir. 2003) (*citing* Turner v. Safely, 482 U.S. 78, 84 (1987); O'Lone v. Shabazz, 482 U.S. 342 (1987)).  The fact that the DOC limits the types and amount of personal property inmates may have in their possession is logical in light of the numerous security concerns that could arise if inmates could possess any kind of property in any amount.  To confiscate and/or destroy items not permitted, whether due to the type of item or sheer volume of items, is a reasonable way to enforce this regulation.

Plaintiff was in possession of an amount of items that greatly exceeded the limits permitted by the regulations at SCI Camp Hill.  Plaintiff alleges that, contrary to DOC policy, the items were destroyed by Swenski before any hearing on Plaintiff's right to possess the times.  If Swenski's actions were contrary to policy and at some point afterwards the misconduct was ruled unwarranted, making the items wrongfully destroyed, Plaintiff could have received replacements or been reimbursed for the value of the items, which were perishables and toiletries.  *See* Exh. D-5.  However, Plaintiff was found to have in fact been in violation of the DOC regulations regarding personal property.  Id.  The decision was upheld on all appeals. Given these circumstances, the actions regarding the contraband are not shocking to the conscience.

**D.  In any event, Plaintiff's civil rights claims against defendants Beard, Hatcher, and Swenski in their official capacities are not cognizable.[6]**

State officials, when acting in their official capacity and sued for damages, receive the same protection from suit provided to their governmental entity.  Hafer v. Melo, 502 U.S. 21, 25 (1991).  In other words, "[a] suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office...As such, it is no different than a

---

[6] Plaintiff's Complaint fails to clarify whether Plaintiff sues the defendants in their official or individual capacities, or both.  The instant motion will therefore address the claims as they relate to the defendants' official and individual capacities.

suit against the state itself." <u>Chladek v. Commonwealth of Pa.</u>, No. 97-0355, 1998 WL 54345, at

*5 (E.D.Pa. Jan. 29, 1998) (*citing* <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71

(1989)).

Plaintiff's civil rights damages suit against defendants Beard, Hatcher, and Swenski in

their official capacities, is the equivalent of a suit against the DOC itself.  These defendants are

thereby entitled to the same protections provided by law to their employer, the DOC.  The DOC

is protected from Plaintiff's claims by Eleventh Amendment immunity.  Additionally, the DOC

is not considered a person for § 1983 purposes.

**1.  In their official capacities, the defendants are protected from damages claims by Eleventh Amendment immunity.**

It is well established that the Eleventh Amendment immunizes states and state agencies

from federal court suits by private parties.  <u>Idaho v. Coeur d'Alene Tribe of Idaho</u>, 521 U.S. 261

(1997);  <u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 54 (1996);  <u>Puerto Rico Aqueduct</u>

<u>and Sewer Authority v. Metcalf and Eddy</u>, 506 U.S. 139 (1993); <u>Dellmuth v. Muth</u>, 491 U.S. 223

(1989); <u>Welch v. Texas Dept. of Highways</u>, 483 U.S. 468 (1987); <u>Atascadero State Hospital v.</u>

<u>Scanlon</u>, 473 U.S. 234 (1985); <u>Pennhurst State School and Hospital v. Halderman</u>, 465 U.S. 89

(1984).

Eleventh Amendment immunity protects a state from suit regardless of whether the party

is a citizen of that state or not, <u>Pennhurst</u>, 465 U.S. at 100, and regardless of the type of relief

sought.  <u>Id.</u> at 98.  This immunity extends "to suits against departments or agencies of the state

having no existence apart from the state."  <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25 (3d Cir.

1981), *cert. denied*, 469 U.S. 886 (1984).

There are two ways to get around a state's Eleventh Amendment immunity. A state may consent to being sued or Congress may specifically abrogate this immunity pursuant to a valid exercise of power. *See* Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000).

While a state may consent to be sued in federal court, thereby waiving its immunity, Pennsylvania has not done so. To the contrary, as noted in Laskaris, 661 F.2d at 25, by virtue of 42 Pa.C.S. § 8521 (b), Pennsylvania has explicitly withheld its consent, thereby retaining to the fullest possible extent the immunity afforded by the Eleventh Amendment.

Eleventh Amendment immunity may also be bypassed when Congress specifically abrogates this immunity pursuant to a valid exercise of power. Wheeling and Lake Erie Railway Co. v. Public Utility Commission of the Commonwealth of Pennsylvania, 141 F.3d 88, 91 (3d Cir. 1998). However, "Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983." Petsinger v. Pa. Department of Transportation, 211 F.Supp.2d 610, 613 (E.D.Pa. 2002), *citing* O'Hara v. Ind. Univ. Of Pa., 171 F.Supp. 490, 495 (W.D.Pa. 2001).

The DOC is part of the executive arm of the Commonwealth of Pennsylvania and is considered an arm of the state entitled to Eleventh Amendment immunity. *See* Lavia v. Pennsylvania, Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000); Bey v. Pennsylvania Dept. of Corrections, 98 F.Supp.2d 650, 657 (E.D.Pa. 2000); 71 P.S. § 61. When sued for damages in their official capacities, Beard, Hatcher, and Swenski are likewise entitled to the same immunity.[7]

---

[7] Pursuant to the Ex parte Young doctrine, the Eleventh Amendment does not shield state officials from suit in their official capacities where prospective injunctive relief is sought. *See* Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002); Ex parte Young, (continued…)

### 2. When sued in their official capacities for damages, the defendants are not persons for § 1983 purposes.

In addition to the protection of Eleventh Amendment immunity, the DOC, and therefore Beard, Hatcher, and Swenski, in their official capacities, cannot be sued for damages under § 1983. This statute provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). The Supreme Court has specifically ruled that states and their agencies are not considered "persons" for purposes of this statute and thus cannot be subject to claims brought pursuant to § 1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). *See also,* Fidtler v. Pennsylvania Department of Corrections, 55 Fed.Appx. 33 (3d Cir. 2002). The Court explained that governmental entities that are "arms of the state" are not considered persons. Will, at 70.

As stated, the DOC is an arm of the state. Thus, the DOC, and Beard, Hatcher, and Swenski in their official capacities, cannot have a damages suit brought against them pursuant to § 1983. Because the DOC is protected not only by Eleventh Amendment immunity, but also by the "person" requirement of § 1983, a damages suit against the defendants in their official capacities is precluded for these same reasons.

---

209 U.S. 123, 159-160 (1908). Plaintiff's Complaint does not seek this type of relief. *See* Complaint, § IV.

**E.  In his personal capacity, defendant Beard was not involved in any alleged civil rights violation.**

For acts allegedly taken in his individual capacity, "'[a] defendant in a civil rights action must have personal involvement' to be liable." Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (*quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  This involvement may also be demonstrated through allegations of participation or actual knowledge and acquiescence in the violation.  Rode, 845 F.3d at 1207.  Defendant Beard was not sufficiently involved in Plaintiff's alleged civil rights violation.

The only mention of defendant Beard in the Complaint is the allegation that Plaintiff "contacted" Beard regarding both incidents.  Complaint, §V., ¶3, 5.  Contacting the DOC Secretary is not part of the appellate procedure outlined in the DOC grievance or misconduct policies.  See Exhs. D-9, D-11.  Even if Plaintiff did in fact mail a letter to this high-ranking official regarding each of the two incidents and no response was given, such action alone cannot be construed as personal involvement in the loss of property.  *See* Bennett v. Horn, No. 00-4757, 2001 WL 950150, at *2 (E.D.Pa. Aug. 15, 2001); Bullock v. Horn, No. 99-1402, 2000 WL 1839171, at * 5 (E.D.Pa. Oct. 31, 2000) ("[I]t would be anomalous to suggest that a prisoner could name as a Defendant any governmental official, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").  This is especially true under the instant facts, where Plaintiff had already written letters to and received responses from other officials within the Secretary's office.  The DOC Secretary's Office of Inmate Grievances and Appeals responded to Plaintiff's inquiry regarding the watch and the DOC Chief Hearing Examiner responded to Plaintiff's misconduct appeal for the possession of contraband.  *See* Complaint, §V., ¶3; Exhs. D-3, D-4, D-8.

Any official policies that defendant Beard is responsible for implementing would be considered official acts for which he is immune from suit (*see* § D., supra).  Additionally, it is well established that the theory of *respondeat superior* is inapplicable for civil rights violations by individuals acting under color of state law.  <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993).

## IV.    CONCLUSION

Based on the foregoing, the Complaint against defendants Beard, Hatcher, and Swenski should be dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust administrative remedies or pursuant to 42 U.S.C. § 1997e(c) or Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

D. MICHAEL FISHER
ATTORNEY GENERAL


BY:     <u>    s/  Kevin Bradford      </u>
Kevin R. Bradford
Deputy Attorney General
Identification No. 88576

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section


OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS MCEACHIN, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| vi. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| | : | |
| Defendants | : | No. 02-04691 |

## CERTIFICATE OF SERVICE

     I, Kevin R. Bradford, Deputy Attorney General, hereby certify that the within Motion to Dismiss was electronically filed and is available for viewing and downloading from the ECF system at https://ecf.paed.uscourts.gov/.

     I further certify that a true and correct copy of this document was mailed on September 10, 2003, by first class mail, postage prepaid to:

     Thomas McEachin, # AY-8032
     State Correctional Institute
      at Albion
     10745, Route 18
     Albion, PA 16401

                                D. MICHAEL FISHER
                                ATTORNEY GENERAL

                    BY:      s/ Kevin Bradford
                                Kevin R. Bradford
                                Deputy Attorney General
                                Identification No. 88576

                                Susan J. Forney
                                Chief Deputy Attorney General
                                Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

**EXHIBITS FILED SEPARATELY IN PAPER FORMAT ONLY**