IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCEACHIN,                     :          CIVIL ACTION
                                     :
          Plaintiff                  :
                                     :
     v.                              :
                                     :
JEFFREY BEARD, et al.,               :
                                     :
          Defendants                 :          No. 02-04691

## ORDER

     AND NOW, this      day of           2004, upon consideration of the Commonwealth

defendants' motion for summary judgment and Plaintiff's response hereto (if any), it is

ORDERED that the said motion is GRANTED.  Judgment is entered in favor of defendants

Beard, Swenski, and Hatcher and against Plaintiff.

                                        BY THE COURT:


                                        _____
                                        EDUARDO C. ROBRENO,    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS MCEACHIN, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFREY BEARD, et al., | : | |
| | : | |
| Defendants | : | No. 02-04691 |

**COMMONWEALTH DEFNDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Jeffrey A. Beard, Leslie Hatcher and Sergeant Swenski (collectively, "the Commonwealth defendants") move the Court pursuant to Fed.R.Civ.P. 56, to enter judgment in their favor, and aver as follows:

1. Based upon the facts as submitted in the pleadings, in Plaintiff's deposition, and in the declaration of defendant Leslie Hatcher, there is no genuine issue as to any material fact.

2. The Commonwealth defendants are entitled to judgment as a matter of law because:

    a.   With respect to Plaintiff's claim about his watch, Plaintiff has failed to exhaust his administrative remedies as mandated by 42 U.S.C. 1997e(a).

    b.   In their official capacities, the Commonwealth defendants are protected from damages suits by virtue of the Eleventh Amendment and the "person" requirement of 42 U.S.C. § 1983.

    c.   Plaintiff's Complaint fails to raise any claims for prospective injunctive relief.

    d.   Defendant Beard was not personally involved in any of the alleged violations of Plaintiff's civil rights.

e.   Administrative remedies satisfy any due process Plaintiff is entitled to.

f.   The rejection of a grievance is not a constitutional violation.

g.   Allegations of groundless misconducts and false evidence are not constitutional violations where a hearing regarding the misconduct takes place.

h.   Even if a civil rights violation did occur, the Commonwealth defendants are protected from liability for damages by qualified immunity.

This motion is supported by the attached memorandum of law.

WHEREFORE, the Commonwealth defendants pray for an order granting judgment in their favor, thereby dismissing all claims by Plaintiff against them and affording such further relief as is just and proper.

GERALD J. PAPPERT
ACTING ATTORNEY GENERAL

BY:      s/ Kevin Bradford
Kevin R. Bradford
Deputy Attorney General
Identification No. 88576

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCEACHIN,                          :        CIVIL ACTION
                                          :
              Plaintiff                   :
                                          :
        v.                                :
                                          :
JEFFREY BEARD, et al.,                    :
                                          :
              Defendants                  :        No. 02-04691


## MEMORANDUM IN SUPPORT OF COMMONWEALTH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I.    STATEMENT OF THE CASE

Plaintiff, Thomas McEachin, an inmate of the State Correctional Institution at Albion,

Pennsylvania ("SCI Albion"), brings this cause of action pursuant to 42 U.S.C. § 1983, alleging

that the defendants violated Plaintiff's civil rights.  Named as defendants are Jeffrey A. Beard,

the Secretary of the Pennsylvania Department of Corrections (the "DOC"); Leslie Hatcher,

Grievance Coordinator of State Correctional Institution at Graterford ("SCI Graterford"); and

Sergeant Joseph Swenski of the State Correctional Institution at Camp Hill ("SCI Camp Hill").

Complaint at 1 (attached as Exh. D-1).   From this point forward, these three defendants will be

collectively referred to as "the Commonwealth defendants." [1]

---

[1]Plaintiff originally commenced this action as a Writ of Mandamus, naming Beard, Swenski,
Donald Vaughn (the ex-Superintendent of SCI Graterford) and the DOC as defendants.  This
Court dismissed the Writ for lack of subject matter jurisdiction, granting leave to Plaintiff to re-
file this action as a § 1983 action.  When Plaintiff eventually did so, he did not include Vaughn
and the DOC as defendants, but added Hatcher.  These changes are noted by this Court's June
27, 2003 order and the current docket.

On September 10, 2003, the Commonwealth defendants filed a Motion to Dismiss

Plaintiff's Complaint based on numerous grounds. Following Plaintiff's response in opposition

and a Tele-Conference with the Court, Plaintiff, and undersigned counsel, the Court denied the

Commonwealth defendants' motion without prejudice and ordered that Plaintiff's deposition be

taken. Plaintiff's deposition was taken via video on December 11, 2003 (attached as Exh. D-2).

The Commonwealth defendants now move for summary judgment.

## II.    STATEMENT OF THE UNDISPUTED FACTS

Plaintiff, an inmate currently incarcerated at SCI Albion, complains about two separate

incidents involving his personal property while in DOC custody.

The first incident involves Plaintiff's watch. On September 5, 2001, while being

prepared for transport from SCI Graterford to another state correctional institution, Plaintiff was

asked to turn his watch over to a SCI Graterford prison official. Pl. Dep. at 52-53; Compl. at §

V, ¶ 1. Plaintiff did not object to or question the request and turned over his watch to the official

who in turn filled out a "confiscation slip" documenting this action. Id. The confiscation slip

was placed in a box containing Plaintiff's property, although the watch itself was not. Id. The

watch had an approximate value of $30.00. Pl. Dep. at 52. *See also* Pl. Dep. Exh. 10. Plaintiff

was then transferred to the State Correctional Institution at Waymart and later to SCI Camp Hill.

Pl. Dep. at 53; Compl. at § V, ¶ 2. Although Plaintiff maintained possession of two boxes of

property throughout this period, he did not re-obtain possession of the third box from SCI

Graterford that contained the confiscation slip until November 16, 2001, while at SCI Camp Hill.

Pl. Dep. at 55; Compl. at § V, ¶ 2.

Sometime after receiving this property from SCI Graterford (which did not include the

confiscated watch), Plaintiff wrote a letter to the Deputy of Security at SCI Graterford regarding

his watch, but never received a response.  Pl. Dep. at 57; Compl. at § V, ¶ 2.  On December 17,

2001, Plaintiff filed a grievance regarding the watch with the SCI Graterford Grievance

Coordinator, defendant Hatcher.  Pl. Dep. at 53-56; Compl. at §V, ¶ 2.  *See also* Pl. Dep. Exh.

10.  On December 20, 2001, the grievance, which was assigned the number 10106, was rejected

by defendant Hatcher because it was filed more than 15 days past the date of the incident.  Pl.

Dep. at 56-57; Compl. at §V, ¶ 2; Hatcher Decl. at ¶ 10; Pl. Dep. Exh. 11.

Subsequently, Plaintiff wrote a letter to DOC Chief Grievance Coordinator, Thomas

James, about the watch and defendant Hatcher's rejection of the grievance.  Pl. Dep. at 59-60;

Compl. at § V, ¶ 3.  *See also* Pl. Dep. Exh. 12.  Plaintiff received a response in the form of a

letter dated January 11, 2002 from Tshanna Kyler, Grievance Review Officer of the DOC

Secretary's Office of Inmate Grievances and Appeals.  Pl. Dep. at 60-61; Compl. at § V., ¶ 3.

*See also* Pl. Dep. Exh. 13.  This letter stated that Plaintiff's letter was filed without action due to

his failure to comply with the proper grievance appellate procedure, as outlined by DOC policy

DC-ADM 804.  Pl. Dep. at 59-61; Compl. at §V, ¶ 3.  *See also* Pl. Dep. Exhs. 13, 14 (DC-ADM

804).  The letter explained that pursuant to DC-ADM 804, an appeal to the Secretary's Office of

Inmate Grievances and Appeals, the highest level of appeal for grievances, requires proper

documentation of the grievance itself, the initial response, the appeal to the institution's

Superintendent and the response.  Pl. Dep. at 59-61; Pl. Dep. Exh. 13, 14.  *See also* Hatcher

Decl. at ¶ 7.  This letter also stated that any further correspondence regarding grievance number

10106 which does not include these mandatory documents will result in the dismissal of that

grievance.  Id.  Despite this instruction, Plaintiff did not appeal the grievance and, on February 3,

2002, he wrote a letter to the DOC Secretary, defendant Beard, about the same grievance.  Pl.

Dep. at 68-70; Compl. at §V, ¶ 5.  Plaintiff received no response to this letter.  Compl. at § V, ¶ 5.

The second incident occurred around the same time and involves the confiscation of Plaintiff's excess property.  As noted above, on November 16, 2001, while incarcerated at SCI Camp Hill, Plaintiff received a box of his personal property which he had last seen at SCI Graterford on September 5, 2001.  Pl. Dep. at 17-18.  On this date, defendant Swenski, a Sergeant at SCI Camp Hill, explained to Plaintiff that he had too much property in his cell and told Plaintiff that, according to prison policy, Plaintiff could not have any more property than what he can fit into his footlocker.  Id. at 18-22.  Plaintiff told defendant Swenski that he had just purchased several commissary items and had special permission to have more property than other inmates.  Id. at 18.  Defendant Swenski told Plaintiff that he would return the next day and confiscate any property that was not in the footlocker.  Id. at 19.  As promised, defendant Swenski returned the next day (November 17, 2001) and confiscated Plaintiff's excess property, which was generally toiletries and consumable items.  Id.  Defendant Swenski gave Plaintiff a Confiscated Items Receipt describing each of the confiscated items.  Id. at 49-50.  The word "destroy" was written in the block next to each item.  Id.  Although Plaintiff states that defendant Swenski said he was going to destroy each of the items, Plaintiff never saw what happened to his excess property.  Id. at 21-23.

On this date (November 17, 2001), defendant Swenski also issued Plaintiff a misconduct for possessing contraband in the form of excess property under #36 of the DOC misconduct charges, which is a Category B., Class 1 offense.  Pl. Dep. at 19-23.  *See also* Pl. Dep. Exhs. 1, 2.  Defendant Swenski noted on the misconduct that Plaintiff's excess property (contraband) was stored on the block pending disposition on the misconduct.  Pl. Dep. at 22-23. *See also* Pl. Dep.

Exh. 1.  Attached to the misconduct was a copy of the Confiscated Items Receipt which listed each of the items confiscated.  Id.  Plaintiff requested a formal misconduct hearing which was held on November 27, 2001.  Pl. Dep. at 23-26. *See also* Pl. Dep. Exh. 1.  After reviewing the written version of the incident provided by defendant Swenski, who did not attend the hearing, and listening to Plaintiff's version and argument, the hearing examiner found Plaintiff guilty of a less serious charge of contraband possession: charge #51, a Category B., Class II offense.  Id.  As noted on the disposition report from the hearing, Plaintiff's punishment was a reprimand/warning.  Id.  Plaintiff also claims that the hearing examiner told him that he could have his confiscated property back, although there is no mention of this on the hearing report. Id.

Plaintiff subsequently appealed the ruling to the Program Review Committee (PRC) on a variety of grounds.  Pl. Dep. at 36-37.  *See also* Pl. Dep. Exh. 4.  The PRC upheld the hearing examiner's decision, noting that there were no procedural errors, the evidence supported the decision, and that Plaintiff received the least possible sanction available.  Pl. Dep. at 40.  *See also* Pl. Dep. Exh. 5.

Plaintiff next appealed the decision to Martin Dragovich, the Superintendent of SCI Camp Hill.  Pl. Dep. at 41-42.  *See also* Pl. Dep. Exh. 6.  Dragovich responded by upholding all lower decisions.  Pl. Dep. at 43-45.  *See also* Pl. Dep. Exh. 7.  In this decision, Dragovich explained to Plaintiff that excessive amounts of commissary items are contraband, even if the commissary items, by themselves, are not.  Id.  Dragovich also explained to Plaintiff that consumable commissary items cannot be mailed outside of the institution.  Id.

Plaintiff then filed his final appeal to Robert Bitner of the DOC's Office of the Chief Hearing Examiner, raising the same arguments.  Pl. Dep. 46.  *See also* Pl. Dep. Exh. 8.  Bitner

responded to Plaintiff, upholding all lower level decisions.  Pl. Dep. at 46-47.  *See also* Pl. Dep.

Exh. 9.  Bitner noted that the lower level determinations, which addressed the same issues

presented in the final appeal, were correctly decided.  Id.

### III.    ARGUMENT

#### A.  Standard applicable to motion for summary judgment.

The Court should enter summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed.R.Civ.P. 56(c).  The party seeking summary judgment "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue

of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The motion must be

granted unless the nonmoving party designates specific facts in discovery materials or affidavits

showing a genuine material factual issue that can only be resolved by a trial or unless the law

does not support the motion.  Id. at 324; Fed.R.Civ.P. 56(e).  Conclusory statements are not facts

and cannot create issues of fact.  Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 889

(1990).

#### B.  As a matter of law Plaintiff has failed to exhaust his administrative remedies for the claims relating to his watch.

Pursuant to the Prison Litigation Reform Act of 1995, inmates must exhaust

administrative remedies before bringing civil rights claims in federal court.  Specifically, this

exhaustion provision reads as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The question of whether the administrative remedies are available is one of law. Id.[2]

Section 1997e(a) has been broadly applied by the courts and has not been interpreted to include any exceptions. The provision has a wide scope as it applies to all types of suits brought by inmates about prison life, regardless of the circumstances or the particular right being infringed upon. Porter v. Nussle, 534 U.S. 516, 532 (2002). Furthermore, the provision mandates inmate-plaintiffs to exhaust administrative remedies, even if such action would clearly be futile. Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000) (no futility exception in § 1997e(a)). There is no discretion for the district court to excuse the failure to exhaust. Porter, 534 U.S. at 524. These interpretations are consistent with the purpose of the statute which is "to reduce the quantity and improve the quality of prisoner suits." Id. at 524-25.

As the statute's plain wording reads, the prisoner must exhaust "available" administrative remedies. 42 U.S.C. § 1997e(a). If administrative remedies are unavailable, exhaustion of these remedies is, of course, not possible. Logically, § 1997e(a) does not require exhaustion when the remedies are unavailable to a particular inmate. As noted, the "availability" of administrative remedies is a question of law. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

The Supreme Court addressed the meaning of "available" in Booth v. Churner, 532 U.S. 731 (2001). In Booth, a case which arose from the Third Circuit, the Court found that "available" meant the ability for the administrative proceeding to provide some type of remedy,

---

[2] Where § 1997e(a) is the basis for the motion to dismiss, the exact burden of proof defendants must carry is unclear. See Brown v. Croak, 312 F.3d 109, 111 n.1 (3d Cir. 2002).

even if it is impossible for the proceeding to provide the exact type of relief sought by the plaintiff (such as monetary damages).

The Court noted two practical reasons for considering administrative remedies "available," despite their apparent inability to resolve the issue. First, although an inmate may originally be seeking a certain form of relief, it is possible that the grievance procedure could produce an alternative resolution that would satisfy the inmate. Id. at 737. Second, the administrative proceedings would, at a minimum, somewhat clarify the factual scenario by the time the matter reaches the court system. Id. Administrative remedies have the effect of reducing the overall volume of inmate litigation, as well as the amount of time spent by the courts resolving the issues in those disputes that do make it to court.

Courts have found administrative remedies unavailable in limited circumstances, such as where prison officials have actively prevented an inmate from properly raising issues through the grievance system. For example, where an inmate's request for a grievance form was denied by prison officials, administrative remedies were sufficiently unavailable. Mitchell v. Horn, 318 F.3d 523 (3d Cir. 2003). Likewise, where prison officials incorrectly told an inmate that he could not file a grievance because an investigation of the incident was ongoing, administrative remedies were unavailable. Brown, 312 F.3d 109. Absent misdirection or other interference by prison officials, administrative remedies are generally available.

Another court of this district recently found that an inmate's allegation that an institution failed to respond to an initial grievance does not make administrative remedies unavailable. Harvey v. City of Philadelphia, No. 00-4879, 2003 WL 1618096, at *3 (E.D.Pa. March 27, 2003). The Harvey court held that, even if the inmate's allegations were true, he still had other alternatives, as outlined in the prison handbook, and thus administrative remedies were still

available.  Id.  The court noted that the non-response of prison officials to one grievance is quite different than the situation in Brown, *supra*, where as a result of the inaccurate advice of prison officials, the inmate gave up his right to administrative remedies.

Courts have also rejected the argument that an inmate *substantially complied* with the administrative procedures by commencing, but not completing the grievance process, prior to bringing suit.  Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

Regarding his watch, the instant Plaintiff has taken only the first step in the administrative procedures available to him.[3]  Plaintiff, who filed 46 grievances during his time at SCI Graterford from May 1996 to September 2001, should be well versed in the DOC grievance procedures.  Hatcher Decl. at ¶ 8.  *See also* Pl. Dep. at 64.  Plaintiff concedes that he was aware of the rule that grievances must be submitted within 15 working days[4] of the incident and that the incident giving rise to the grievance occurred on September 5, 2001, the date his watch was wrongly taken from him.  *See* Pl. Dep. at 56-57, 66.  However, Plaintiff waited until December 17, 2001 to file the grievance, 103 days later.  *See* Pl. Dep. at 57.  Plaintiff alleges that he wanted to wait to file the grievance until he received the confiscation slip for the watch, which he obtained on November 16, 2001.  *See* Pl. Dep. at 66-67.  However, even after he obtained the slip, he did not file the grievance until another 19 working days had passed.

After Plaintiff submitted the initial grievance to defendant Hatcher, not surprisingly he received a response informing him that the grievance was untimely.  Pl. Dep. at 53-56; Compl at

---

[3] The Commonwealth defendants do not argue that Plaintiff has not exhausted his administrative remedies regarding the contraband.

[4] Working days are Monday through Friday, excluding state holidays.  Hatcher Decl. at ¶ 3.

§ V., ¶ 2.  *See also* Pl. Dep. Exh. 11.  Plaintiff's next action was to write a letter to the DOC Secretary and Chief Grievance Officer regarding the grievance.  This action also did not comply with grievance procedures. Hatcher Decl. at ¶ 6 & Attachment A.

The grievance procedure in effect at the time explains that, following the Initial Review, any appeal must be directed to the Facility Manager (Superintendent) of the Institution.  Hatcher Decl. at ¶ 6 & Att. A.  Only after final disposition of this level of review, may the inmate further appeal to the DOC Secretary's Office of Inmate Grievances or Appeals.  Hatcher Decl. at ¶ 7 & Att. A.  Even if Plaintiff had trouble understanding this policy, the response he received to his letter (from the DOC Secretary's Office of Inmate Grievances and Appeals), which in simple terms explained the proper procedure, should have eliminated any confusion.  Pl. Dep. Exh. 13. Furthermore, this letter warned that any other correspondence to that office regarding the same grievance, that did not include copies of the paperwork from the lower level appeals, would result in the dismissal of the grievance.  Id.

Instead of filing an appeal of the grievance to the Superintendent of SCI Graterford as instructed by DC-ADM 804 and the letter he received from the DOC's Secretary's Office of Inmate Grievances and Appeals, Plaintiff mailed another letter regarding the grievance to the DOC Secretary.  After receiving no response, Plaintiff simply filed the instant lawsuit, baldly asserting that the defendants denied him access to the grievance procedure.  This claim is simply not true.

Plaintiff's own failure to comply with the DOC grievance procedure resulted in the initial rejection of his grievance.  Plaintiff knew grievances had to be submitted within 15 working days, yet chose to wait 103 days to file his grievance.  Plaintiff does not claim that the defendants misled him or prevented him from filing a grievance at an earlier date.  Furthermore, if Plaintiff

was actually confused about how to appeal from this initial rejection, the letter from the DOC

DOC's Secretary's Office of Inmate Grievances and Appeals provided him with simple and

accurate instructions on what action to take and what actions not to take.  Inexplicably, Plaintiff

chose to do the one thing he was told not to do: mail another letter to the DOC about the same

grievance that did not include all the required documents.

Plaintiff should not be rewarded for his deliberate refusal to properly use the grievance

procedure by allowing his actions to meet the exhaustion requirement of § 1997e(a).  Such a

ruling would create a simple loophole for litigious inmates and trivialize the Supreme Court's

holdings in Booth and Porter that exhaustion of administrative remedies is now mandatory.

Since Plaintiff has not exhausted his administrative remedies regarding his watch, as

mandated by § 1997e(a), the claims regarding this incident should be dismissed.  Exhaustion is a

precondition to suit and cannot be cured by exhausting administrative remedies while the suit is

pending.  *See* Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).[5]

### C.  Plaintiff's civil rights claims against the Commonwealth defendants, in their official capacities, are not cognizable.[6]

State officials, when acting in their official capacity and sued for damages, receive the

same protection from suit provided to their governmental entity.  Hafer v. Melo, 502 U.S. 21, 25

(1991).  In other words, "[a] suit against a state official in his or her official capacity is not a suit

against the official, but rather a suit against the official's office...As such, it is no different than a

---

[5]    Plaintiff has had, and continues to have the ability to appeal defendant Hatcher's initial
ruling to the Superintendent of SCI Graterford.  The futility of such an appeal, due to time
constraints or any other reasons, does not excuse Plaintiff's failure to exhaust.  *See* Nyhuis, 204
F.3d at 71.

[6] Plaintiff's Complaint fails to clarify whether Plaintiff sues the defendants in their official or
individual capacities, or both.  The instant motion will therefore address the claims as they relate
to the defendants' official and individual capacities.

suit against the state itself." Chladek v. Commonwealth of Pa., No. 97-0355, 1998 WL 54345, at

*5 (E.D.Pa. Jan. 29, 1998) (citing Will v. Michigan Department of State Police, 491 U.S. 58, 71

(1989)).

Plaintiff's civil rights damages suit against defendants Beard, Hatcher, and Swenski in

their official capacities, is the equivalent of a suit against the DOC itself.  These defendants are

thereby entitled to the same protections provided by law to their employer, the DOC.  The DOC

is protected from Plaintiff's claims by Eleventh Amendment immunity.  Additionally, the DOC

is not considered a person for § 1983 purposes.

### 1.  In their official capacities, the Commonwealth defendants are protected from damages claims by Eleventh Amendment immunity.

It is well established that the Eleventh Amendment immunizes states and state agencies

from federal court suits by private parties.  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261

(1997);  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996);  Puerto Rico Aqueduct

and Sewer Authority v. Metcalf and Eddy, 506 U.S. 139 (1993); Dellmuth v. Muth, 491 U.S. 223

(1989); Welch v. Texas Dept. of Highways, 483 U.S. 468 (1987); Atascadero State Hospital v.

Scanlon, 473 U.S. 234 (1985); Pennhurst State School and Hospital v. Halderman, 465 U.S. 89

(1984).

Eleventh Amendment immunity protects a state from suit regardless of whether the party

is a citizen of that state or not, Pennhurst, 465 U.S. at 100, and regardless of the type of relief

sought.  Id. at 98.  This immunity extends "to suits against departments or agencies of the state

having no existence apart from the state."  Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir.

1981), cert. denied, 469 U.S. 886 (1984).

There are two ways to get around a state's Eleventh Amendment immunity.  A state may consent to being sued or Congress may specifically abrogate this immunity pursuant to a valid exercise of power. *See* Kimel v. Florida Bd. of Regents, 528 U.S. 62, 72-73 (2000).

While a state may consent to be sued in federal court, thereby waiving its immunity, Pennsylvania has not done so.  To the contrary, as noted in Laskaris, 661 F.2d at 25, by virtue of 42 Pa.C.S. § 8521 (b), Pennsylvania has explicitly withheld its consent, thereby retaining to the fullest possible extent the immunity afforded by the Eleventh Amendment.

Eleventh Amendment immunity may also be bypassed when Congress specifically abrogates this immunity pursuant to a valid exercise of power.  Wheeling and Lake Erie Railway Co. v. Public Utility Commission of the Commonwealth of Pennsylvania, 141 F.3d 88, 91 (3d Cir. 1998).  However, "Congress did not abrogate state immunity in general in enacting civil rights legislation, including § 1983."  Petsinger v. Pa. Department of Transportation, 211 F.Supp.2d 610, 613 (E.D.Pa. 2002), *citing* O'Hara v. Ind. Univ. Of Pa., 171 F.Supp. 490, 495 (W.D.Pa. 2001).

The DOC is part of the executive arm of the Commonwealth of Pennsylvania and is considered an arm of the state entitled to Eleventh Amendment immunity.  *See* Lavia v. Pennsylvania, Dept. of Corrections, 224 F.3d 190, 195 (3d Cir. 2000); Bey v. Pennsylvania Dept. of Corrections, 98 F.Supp.2d 650, 657 (E.D.Pa. 2000); 71 P.S. § 61.  When sued for damages in their official capacities, the Commonwealth defendants are likewise entitled to the same immunity.[7]

---

[7] Pursuant to the Ex parte Young doctrine, the Eleventh Amendment does not shield state officials from suit in their official capacities where prospective injunctive relief is sought.  *See* Koslow v. Commonwealth of Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002); Ex parte Young, (continued…)

**2. When sued in their official capacities for damages, the Commonwealth defendants are not persons for § 1983 purposes.**

In addition to the protection of Eleventh Amendment immunity, the DOC, and therefore Beard, Hatcher, and Swenski, in their official capacities, cannot be sued for damages under § 1983. This statute provides in relevant part:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). The Supreme Court has specifically ruled that states and their agencies are not considered "persons" for purposes of this statute and thus cannot be subject to claims brought pursuant to § 1983. Will v. Michigan Department of State Police, 491 U.S. 58 (1989). *See also,* Fidtler v. Pennsylvania Department of Corrections, 55 Fed.Appx. 33 (3d Cir. 2002). The Court explained that governmental entities that are "arms of the state" are not considered persons. Will, at 70.

As stated, the DOC is an arm of the state. Thus, the DOC, and Beard, Hatcher, and Swenski in their official capacities, cannot have a damages suit brought against them pursuant to § 1983. Because the DOC is protected not only by Eleventh Amendment immunity, but also by the "person" requirement of § 1983, a damages suit against the defendants in their official capacities is precluded for these same reasons.

---

209 U.S. 123, 159-160 (1908). Plaintiff's Complaint does not seek this type of relief. *See* Complaint, § IV.

**D.  In his personal capacity, defendant Beard was not involved in any alleged civil rights violation.**

For acts allegedly taken in his individual capacity, "'[a] defendant in a civil rights action must have personal involvement' to be liable." Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (*quoting* Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  This involvement may be demonstrated through allegations of participation or actual knowledge and acquiescence in the violation.  Rode, 845 F.3d at 1207.  Defendant Beard was not sufficiently involved in Plaintiff's alleged civil rights violation.

Plaintiff states that he mailed a letter to defendant Beard that addressed both incidents.  . Pl. Dep. at 73-74; Compl. at §V, ¶5.[8]  Contacting the DOC Secretary is not part of the appellate procedure outlined in the DOC grievance or misconduct policies.   Hatcher Decl. at ¶¶ 3-7 & Att. A.  Even if Plaintiff did mail a letter to this high-ranking official regarding each of the two incidents and no response was given, such action alone cannot be construed as personal involvement in the loss of property.  *See* Bennett v. Horn, No. 00-4757, 2001 WL 950150, at *2 (E.D.Pa. Aug. 15, 2001); Bullock v. Horn, No. 99-1402, 2000 WL 1839171, at * 5 (E.D.Pa. Oct. 31, 2000) ("[I]t would be anomalous to suggest that a prisoner could name as a Defendant any governmental official, no matter how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.").  This is especially true under the instant facts, where Plaintiff had already written letters to and received responses from other officials within the Secretary's office regarding these incidents.  The DOC Secretary's Office of Inmate Grievances and Appeals responded to Plaintiff's inquiry regarding the watch and the

---

[8] Plaintiff also states that on one occasion a family member called defendant Beard's office on Plaintiff's behalf, but never got through to defendant Beard.  Pl. Dep. at 74-76.

DOC Chief Hearing Examiner responded to Plaintiff's misconduct appeal for the possession of contraband. *See* Pl. Dep. Exhs. 9, 13; Compl. at §V., ¶ 3;

Plaintiff concedes that he sued defendant Beard because "he is in charge of supervision for his staff members." Pl. Dep. at 73. It is well established that the theory of *respondeat superior* is inapplicable for civil rights violations by individuals acting under color of state law. <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 n.14 (3d Cir. 1993).

### E.  The DOC administrative proceedings provide due process

Plaintiff generally alleges that, on two occasions, property was taken from him without due process in violation of the Fourteenth Amendment. The Fourteenth Amendment Due Process clause encompasses two types of due process, substantive and procedural. Since Plaintiff does not clarify which type he alleges was violated by the deprivations, both will be addressed.[9]

### 1.  Procedural Due Process

Procedural due process guarantees that the state will not deprive someone of a protected interest in life, liberty, or property without due process of law. <u>Parrat v. Taylor</u>, 451 U.S. 527, 537 (1981), *overruled on other grds.*, <u>Daniels v. Williams</u>, 474 U.S. 327 (1986). The deprivation

---

[9]    In addition to the Fourteenth Amendment violation, Plaintiff has alleged a violation of his Fifth Amendment rights (*see* Compl. at § V, ¶¶ 3, 5), also presumably based upon a due process violation. Since the analysis of a due process claim is the same, regardless of whether brought under the Fifth or Fourteenth amendment, they will not be addressed separately. *See* <u>Lebowitz v. Forbes Leasing & Finance Corp.</u>, 326 F.Supp. 1335, 1354 (E.D.Pa. 1971), *aff'd,* 456 F.2d 979 (3d Cir. 1972), *cert. denied*, 409 U.S. 843 (1972).

      Plaintiff has also alleged a violation of his First Amendment rights, without explaining the basis for such a claim. Compl. at § V, ¶ 3. Since this claim is made in the portion of his complaint describing the loss of his watch, it is possible he is arguing that the alleged denial of his access to the DOC grievance procedure is a violation of this amendment. However, as discussed in § B, above, the grievance system was in fact available to Plaintiff, but he did not follow the proper steps. In any event, "prisoners do not have a constitutional right to a prison grievance procedure." <u>Anderson v. Horn</u>, No. 95-6582, 1996 WL 266109, at *2 (E.D.Pa. May 17, 1996).

itself is not a violation of procedural due process. Zinermon v. Burch, 494 U.S. 113, 126 (1990). The violation occurs when the deprivation was made without fair procedure. Id.

It is well established that, "due process…is a flexible concept that varies with the particular situation." Id. at 127. The Supreme Court has held that where prisoners are deprived of personal property, meaningful post-deprivation remedies provide sufficient due process. Parrat, 451 U.S. at 544; Hudson v. Palmer, 468 U.S. 517, 532 (1984). In Parrat, prison officials misplaced the inmate-plaintiff's "hobby kit" which he had ordered and had sent to the prison. 451 U.S. at 530. The Court held that where *negligent* actions of state actors result in the deprivation of property, due process is nonetheless provided by meaningful post-deprivation remedies. Id. at 543-544.

In Hudson, the Supreme Court expanded its holding in Parrat to apply to *intentional* deprivations of inmate's property by prison officials. Hudson, 468 U.S. at 533. The Court has reasoned that, in either situation, requiring a pre-deprivation hearing would be absurd since it would be impossible to determine exactly when a negligent or intentional deprivation of property would occur. Zinermon, 494 U.S. at 137 (*discussing* Parrat, Hudson). It should be noted that these principles only apply where the deprivation of property is the result of a random or unauthorized act and not pursuant to an established state procedure. Hudson, 468 U.S. at 532.

The Courts of this Circuit have consistently held that the DOC's prison grievance procedure provides an adequate post-deprivation of property remedy. Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000); Allah v. Al-Hafeez, 208 F.Supp.2d 520, 536-537 (E.D.Pa. 2002); Pritchard v. Ridge, No. 96-4356, 1997 WL 907564, at *2 (E.D.Pa. Jul. 7, 1997); Rogers v. Brown, No. 95-7867, 1996 WL 608473, at *2 (E.D.Pa. Oct. 24, 1996). The mere existence of this available post-deprivation remedy forecloses any due process claim.

- 17 -

Austin v. Lehman, 893 F.Supp. 448, 454 (E.D.Pa. 1995).  The fact that an inmate is dissatisfied with the result of these proceedings does not affect their adequacy as a post-deprivation remedy. Isley v. Horn, No. 95-5389, 1996 WL 510090, at *6 (E.D.Pa. Sep. 3, 1996).[10]

In the instant matter, there are two separate incidents which Plaintiff appears to allege were deprivations of property by state officials without due process.  In both instances Plaintiff received due process.

Plaintiff's procedural due process rights have not been violated by the deprivation of the watch.  Plaintiff's watch was taken from Plaintiff in the course of his being transferred from SCI Graterford to another institution and apparently was misplaced in the course of the transfer. Complaint, § V, ¶ 1.  The deprivation, whether accidental or intentional, was not alleged to have occurred as a result of some established state procedure.  Adequate post-deprivation remedies will therefore satisfy due process.

The DOC grievance procedure, which Plaintiff was aware of, was, and remains available to him.  The mere *existence* of this procedure provides Plaintiff with sufficient due process. Tillman, 221 F.3d at 422 (emphasis added).  Although Plaintiff alleges the grievance procedure was not available to him, as explained in §B, above, it was in fact available, but Plaintiff failed to properly utilize the system.  Plaintiff's failure to properly follow the grievance procedure does not mean that he was denied due process.  Id.

---

[10] Although a state tort claim would also provide adequate post-deprivation proceedings, the defendants, all of whom were state officials acting within the scope of their employment, would be protected from such a claim by the sovereign immunity enjoyed by Commonwealth of Pennsylvania actors.  1 Pa.C.S. § 2310.  While there is an exception to this immunity for damages resulting from the Commonwealth's possession of personal property, 42 P.S. § 8522(b)(3), this exception is limited to situations where the property itself caused the injury. Isley, 1996 WL 510090, at *6.  Plaintiff has alleged that his injury resulted from the Commonwealth's care of his property, not the property itself.  Thus the exception is inapplicable.

The second incident involving the contraband does not amount to a due process violation for at least two reasons. First, there is no protected property interest involved. An inmate cannot claim to have a property interest in items that are considered contraband. Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984).

Second, if Plaintiff did have a protected interest in contraband (a point not conceded), he has received all the process due regarding the deprivation of this contraband. Plaintiff bases his due process argument on the alleged fact that Swenski intentionally destroyed of Plaintiff's property *prior* to his initial misconduct hearing, in violation of DOC regulations. Pl. Dep. at 47; Compl. at § V, ¶ 4. Since Swenski was acting contrary to established state procedures, Plaintiff's due process rights are preserved by available post-deprivation remedies.

Plaintiff's due process came in the form of a misconduct hearing relating to the incident and appeals of that hearing. Although DOC misconduct proceedings are a slightly different type of administrative proceeding than grievance proceedings, they may provide due process for a deprivation of property. DOC misconduct hearings provide due process for the deprivation of *liberty* so long as the subject receives notice of the proceeding and is afforded an opportunity to be heard. Smith v. Messinger, 293 F.3d 641, 653-54 (3d Cir. 2002). It follows that if these same requirements are met, misconduct procedures also provide due process for deprivations of *property*. *See* LaFountain v. Kerckaert, 95 F.3d 1152, 1996 WL 479131, at *2 (6th Cir. 1996) (unpublished opinion) (*citing* Zinermon, 494 U.S. at 128) (post-deprivation misconduct hearing provides adequate due process).

Plaintiff does not argue and cannot argue that he was denied access to this administrative procedure. Plaintiff attended the initial misconduct hearing and was provided with an opportunity to present his arguments regarding the contraband. Pl. Dep. at 23-26. *See also* Pl.

Dep. Exh. 1.  Subsequently, he appealed the decision all the way up to the DOC's Office of the

Chief Hearing Examiner, receiving a response at each level.  See Pl. Dep. at 36-47.  *See also* Pl.

Dep. Exhs. 4-9.  These procedures afforded any due process that Plaintiff is entitled to.

### 2.  Substantive Due Process

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary,

wrongful government actions 'regardless of the fairness of the procedures used to implement

them.'"  <u>Zinermon</u>, 494 U.S. 113, 125 (*quoting* <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).

To show that discretionary executive action, like that of a prison official, has violated substantive

due process rights, there must be a showing that the action taken "shocks the conscience."

<u>United Artists Theatre Circuit, Inc. v. The Township of Warrington, PA</u>, 316 F.3d 392 (3d Cir.

2003).

The deprivations of the instant Plaintiff's property are far from "conscience shocking."

Plaintiff's watch was taken from Plaintiff in the course of his being transferred from SCI

Graterford to another institution and apparently was misplaced or mistakenly taken from him.

Even if the watch cannot be located, the accidental or improper deprivation of one item of

Plaintiff's property with an approximate value of $30.00 in the course of a transfer from one

prison to another cannot be considered conscience-shocking activity.

The deprivation of Plaintiff's contraband is even less shocking to the conscience.

Regulations reasonably related to a legitimate penological interest pass Constitutional muster.

<u>Sutton v. Rasheed</u>, 323 F.3d 236, 252 (3d Cir. 2003) (*citing* <u>Turner v. Safely</u>, 482 U.S. 78, 84

(1987); <u>O'Lone v. Shabazz</u>, 482 U.S. 342 (1987)).  The fact that the DOC limits the types and

amount of personal property inmates may have in their possession is logical in light of the

numerous security concerns that could arise if inmates were allowed to possess any kind of

property in any amount.  To confiscate and/or destroy items not permitted, whether due to the type of item or sheer volume of items, is a reasonable way to enforce this regulation.

Plaintiff was in possession of an amount of items that exceeded the limits permitted by the regulations at SCI Camp Hill.  Plaintiff alleges that this is incorrect and that, contrary to DOC policy, the items were destroyed by defendant Swenski before any hearing on Plaintiff's right to possess the times.  If defendant Swenski's actions were in fact contrary to policy and at some point afterwards the misconduct was ruled unwarranted, making the items wrongfully destroyed, Plaintiff could have received replacements or been reimbursed for the value of the items, which were perishables and toiletries.  Pl. Dep. at 20.  *See also* Pl. Dep. Exh. 1.  However, Plaintiff was found to have in fact been in violation of the DOC regulations regarding personal property.  The decision was upheld on all appeals. Given these circumstances, the actions regarding the contraband are not shocking to the conscience.

**F.  As a matter of law, defendant Hatcher's rejection of Plaintiff's grievance does not establish a constitutional violation.**

Plaintiff sues defendant Hatcher because her rejection of his untimely grievance regarding his watch allegedly denied Plaintiff access to the grievance procedure.  Pl. Dep. at 66. Plaintiff admits that he was aware of the rule that grievances must be submitted within 15 days of the occurrence giving rise to the grievance.  Pl. Dep. at 66.  Plaintiff also concedes that his grievance was submitted well beyond that 15-day time frame.  Pl. Dep. at 67.  However, he appears to argue that because of the unique circumstances regarding his grievance, defendant Hatcher should have given Plaintiff a break and her failure to do so unconstitutionally denied Plaintiff access to the grievance system.  Pl. Dep. at 65-66.

This argument is flawed in many respects.  First and foremost, while the grievance procedure does provide an adequate post-deprivation proceeding for due process purposes, there

is no independent constitutional right to a prison's grievance procedure. "Prisoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any constitutional rights." Wilson v. Horn, 971 F.Supp. 943, 947 (E.D.Pa. 1997) (internal citations omitted), aff'd, 142 F.3d 430 (1998). See also Nieves v. Dragovich, No. 1996-6525, 1997 WL 698490, at *7 (E.D.Pa. Nov. 3, 1997); Anderson v. Horn, No. 95-6582, 1996 WL 266109, at *2 (E.D.Pa. May 17, 1996). Thus, any argument based solely upon defendant Hatcher's denial of access to this procedure does not raise a constitutional issue.

Second, Plaintiff was not denied access to this procedure. As explained in §B, above, Plaintiff willfully did not comply with the grievance procedure rules. As a result, Plaintiff's grievance was adjudicated untimely at the initial stage of the grievance proceedings. Although Plaintiff interprets this action to be a denial of access to the grievance system, defendant Hatcher issued a ruling in accordance with DOC grievance procedure rules. Plaintiff is essentially dissatisfied with defendant Hatcher's ruling, which does not translate into a constitutional violation. See Rauso v. Vaughn, No. 96-6997, 2000 WL 873285, at*16 (E.D.Pa. Jun. 26, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."). Furthermore, Plaintiff was never prevented from appealing this ruling.

Finally, even if defendant Hatcher's decision to reject Plaintiff's grievance was somehow contrary to DOC policy, no constitutional issue is raised. As another Circuit has explained, "[w]hether the [prison officials] erroneously applied prison policy at the hearing is not subject to federal review as federal courts are not required to second-guess a prison factfinder's decision." LaFountain v. Kerckaert, 95 F.3d 1152, 1996 WL 479131, at *2 (6th Cir. 1996) (unpublished opinion) (citing Hill, 472 U.S. at 455-56).

**G.  False statements in a misconduct report are not constitutional violations.**

In addition to Plaintiff's allegations that defendant Swenski violated his rights by destroying Plaintiff's contraband prior to his misconduct hearing (addressed in § E, above), he also appears to claim that Swenski somehow misstated the facts in his misconduct report regarding Plaintiff's excess property.  Pl. Dep. at 35-36.  Such an allegation, even if true, does not state a valid §1983 claim.

Where an inmate alleges that a misconduct is groundless and based upon falsified evidence, due process is met where the inmate is provided with an opportunity to be heard and defend against the alleged falsified evidence and groundless misconduct reports.  <u>Smith v. Messinger</u>, 293 F.3d 641, 653-54 (3d Cir. 2002).  "[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim."  <u>Id.</u> at 654.  Since Plaintiff had a misconduct hearing where he was provided with an opportunity to be heard and defend himself, any constitutional claims based upon allegations that defendant Swenski falsified evidence or issued a groundless misconduct report likewise cannot stand.

**H.  Even if any of the Commonwealth defendants did violate Plaintiff's civil rights, they are protected from damages liability by qualified immunity.**

The Commonwealth defendants, as state officials, are entitled to the protection of qualified immunity.  Qualified immunity protects government officials from damages liability in § 1983 claims against them in their individual capacities, unless there has been a constitutional violation of a clearly established right.  <u>Conn v. Gabbert</u>, 526 U.S. 286, 290 (1999).

In determining the applicability of this immunity, the initial inquiry is whether there has in fact been a constitutional violation.  <u>Hope v. Pelzer</u>, 536 U.S. 730, 736 (2002), *citing* <u>Saucier</u>

v. Katz, 533 U.S. 194, 201 (2001).  The Commonwealth defendants have argued extensively up to this point that Plaintiff has suffered no violation of his constitutional rights.

If the Court, despite Commonwealth defendants' argument to the contrary, finds that a constitutional violation has occurred, the second step is to determine whether the right violated was clearly established.  Hope, 536 U.S. at 739, *citing* Harlow v. Fitzgerald, 457 U.S. 800 (1982).  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Hope, 536 U.S. at 739 (*quoting* Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The alleged constitutional rights in question here - the right to file a grievance at any time and the right to have contraband preserved prior to a misconduct hearing - if existent at all, are certainly not clearly established.

Given the instant set of facts and precedent discussed in detail above, it was objectively reasonable for the Commonwealth defendants to act in the manner they did.  Since reasonable prison officials, like the Commonwealth defendants, would have been unaware of any civil rights violations resulting from their conduct, the right was not clearly established.

Even if any of the Commonwealth defendants did, somehow violate Plaintiff's constitutional rights, any violation was not of a clearly established right.  Thus, they are shielded from a § 1983 damages claim by qualified immunity.

## IV.     CONCLUSION

Since the material facts are undisputed, judgment in this matter should be entered in favor

of the Commonwealth defendants as a matter of law, pursuant to Fed.R.Civ.P. 56.

GERALD J. PAPPERT
ACTING ATTORNEY GENERAL


BY:     ___s/  Kevin Bradford___
Kevin R. Bradford
Deputy Attorney General
Identification No. 88576

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCEACHIN,                    :        CIVIL ACTION
                                    :
            Plaintiff               :
                                    :
      vi.                           :
                                    :
JEFFREY BEARD, et al.,              :
                                    :
            Defendants              :        No. 02-04691

## CERTIFICATE OF SERVICE

      I, Kevin R. Bradford, Deputy Attorney General, hereby certify that the within Motion for Summary Judgment was electronically filed and is available for viewing and downloading from the ECF system at https://ecf.paed.uscourts.gov/.

      I further certify that a true and correct copy of this document and exhibits were mailed on January 15, 2004, by first class mail, postage prepaid to:

      Thomas McEachin, # AY-8032
      State Correctional Institute
       at Albion
      10745, Route 18
      Albion, PA 16401


                                    GERALD J. PAPPERT
                                    ACTING ATTORNEY GENERAL


                            BY:     _s/ Kevin Bradford___
                                    Kevin R. Bradford
                                    Deputy Attorney General
                                    Identification No. 88576

                                    Susan J. Forney
                                    Chief Deputy Attorney General
                                    Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262