JANUARY 31, 2004


Thomas McEachin, AY-8032
10745, Route 18/ SCI-ALBION
Albion, PA 16475-0001


OFFICE OF ATTORNEY GENERAL
Kevin R. Bradford, Deputy Attorney General
21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603

      RE:  Thomas McEachin v. Jeffrey Beard, et al. No. 02-4691

Dear Mr. Bradford,

Per the order of Judge Eduardo dated the 27th day of June 2003,
"Plaintiff shall attempt to resolve any discovery disputes by
contacting defendant counsel directly by telephone or through
correspondence".

Mr. Bradford, can you please send me a copy of the following policies
and informations:

1.  DC-ADM 6.8.2, Property Handling and Disposition

2.  DC-ADM 6.3.7, Contraband Handling and Disposition

3.  Administrative Manual 6.3.1 Facility Security

4.  DC-ADM 203, Searches of Inmates and Cells, eff. date July 10,
    2000

5.  DC-ADM 804, Inmate Grievance System Policy, eff. date 01/01/2001

6.  DC-ADM 801, Inmate Discipline, eff. date April 17, 2000

7.  DC-ADM 815, Personal Property, Basic/State Issue Items and
    Commissary/Outside Purchases, eff. date April 02, 2001

8.  Please provide me with the procedure manual as well as the
    training and administrative manual for these policies.  These
    policies, procedures, and administrative manuals should be the
    ones that were in effect during the 2000 - 2004 year period.
    I would also like to have a copy of the administrative training
    manual and procedure for training guards during that same time
    period.

9.  I also would like to have the administrative training manual
    and the procedures that the Hearing Examiner must following in
    accordance with D.O.C. misconduct hearings.


**Exhibit D-1**

PAGE....2 of 2

RE: Thomas McEachin v. Jeffrey Beard, et al. No. 02-4691

10. I would like too be provided with any information pertaining to if any of the defendants' been sued in the past or present, this should include what it was for and what was the out come of these actions.  This should include any criminal actions filed against any of the defendants as well.

11. I would also like too know of all grievances filed against Jeffery Beard, Sgt. Swenski, Leslie Hatcher for the last four years, this should include staff complaints as well, and I would like too see copies of the defendants' work evaluations for the last four years too.

12. I would also like to be provided with a summary of all the misconducts reports that Sgt. Swenski has written for the last four years this should include what where the out come of these misconducts too.

Mr. Bradford, I look forward to receiving this information and thank you for your time and patience in this matter.

Sincerely, *Thomas M Each*

cc: FILE
    Judge Eduardo

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


THOMAS McEACHIN, Pro Se       :         CIVIL ACTION
                                    :
             Plaintiff         :
                                    :
          V.                  :
                                    :
JEFFREY BEARD, et al.          :
                                    :
            Defendants      :         No. 02-4691


## CERTIFICATE OF SERVICE


     I, Thomas McEachin, plaintiff in the above civil action hereby certify that a copy of the attached letter was submitted to defendants' counsel, Kevin Bradford.

     I further certify that a true and correct copy were mailed by way of placing the same in the U.S. Mail, properly addressed as below, this first day of Feburary, 2004.


     OFFICE OF ATTORNEY GENERAL
     Kevin Bradford, Deputy Attorney
     21 South 12th St., 3rd Floor
     Philadelphia, PA 19107


/s/ *Thomas McEachin*
Thomas McEachin, AY-8032
10745, Rt. 18/ SCI-ALBION
Albion, Pennsylvania 16401

MARCH 06, 2004

THOMAS McEACHIN, #AY-8032
10745, ROUTE 18/ SCI-ALBION
ALBION, PA 16475-0002

OFFICE OF ATTORNEY GENERAL
Kevin R. Bradford, Deputy Attorney General
21 S. 12th Street, 3rd. Floor
Philadelphia, PA 19107-3603

　　　RE: T. McEachin V. Jeffrey Beard, et al., CA #02-4691

Dear Mr. Bradford,

Per the order made by Judge Eduardo dated 06/27/03, regarding
discovery, this is my second request to you, so I would appreciate
it if you would provide me with the following information, documents,
and policies, by **MARCH 15, 2004**;

1.　DC-ADM 6.8.2, PROPERTY HANDLING AND DISPOSITION

2.　DC-ADM 6.3.7, CONTRABAND HANDLING AND DISPOSITION

3.　ADMINISTRATIVE MANUAL 6.3.1. FACILITY SECURITY

4.　DC-ADM 203, SEARCHES OF INMATES & CELLS, eff. date July 10, 2000

5.　DC-ADM 804, INMATE GRIEVANCE SYSTEM POLICY, eff. date 01/01/2001

6.　DC-ADM 801, INMATE DISCIPLINE, eff. date 04/17/02

7.　DC-ADM 816, PERSONAL PROPERTY, BASIC/STATE ISSUE ITEMS AND
COMMISSARY/OUTSIDE PURCHASES, eff. date 04/02/01

8.　PLEASE PROVIDE ME WITH THE PROCEDURE MANUAL AS WELL AS THE
TRAINING AND ADMINISTRATIVE MANUAL FOR THESE POLICIES.  THESE
POLICIES, PROCEDURES, AND ADMINISTRATIVE MANUALS SHOULD BE THE
ONES THAT WERE IN EFFECT DURING THE 2000-2004 YEAR PERIOD.
I WOULD ALSO LIKE TO HAVE A COPY OF THE ADMINISTRATIVE TRAINING
MANUAL AND PROCEDURE FOR TRAINING GUARDS DURING THAT SAME TIME
PERIOD

9.　THE ADMINISTRATIVE TRAINING MANUAL AND THE PROCEDURES THAT THE
HEARING EXAMINER MUST FOLLOW IN ACCORDANCE WITH D.O.C. MISCONDUCT
HEARINGS

10.　I WOULD LIKE TOO BE PROVIDED WITH ANY INFORMATION PERTAINING
TO IF ANY OF THE DEFENDANTS HAVE BEEN SUED IN THE PAST OR
PRESENTLY BEING SUED THIS SHOULD INCLUDE WHAT IT WAS FOR AND
WHAT WAS THE OUT COME OF THOSE ACTIONS, ALSO INCLUDE ANY CRIMINAL
ACTIONS FILED AGAINST ANY OF THE DEFENDANTS AS WELL

(1)

**Exhibit D-2**

PAGE....2 OF 2

Kevin R. Bradford,
Deputy Attorney General

11.  I WOULD LIKE TOO KNOW OF ALL GRIEVANCE FILED AGAINST ALL THE
DEFENDANTS FOR THE LAST FOUR YEARS, THIS SHOULD INCLUDE STAFF
COMPLAINTS AS WELL, ALSO INCLUDE THE DEFENDANTS WORK EVALUATIONS
FOR THE LAST FOUR YEARS TOO.

12.  I WOULD ALSO LIKE TO BE PROVIDED WITH A SUMMARY OF ALL THE
MISCONDUCTS REPORTS THAT SGT. SWENSKI HAS WRITTEN UP FOR THE
LAST FOUR YEARS THIS SHOULD INCLUDE WHAT WHERE THE OUT COME
OF THESE MISCONDUCTS REPORTS TOO.

Mr. Bradford, this information is important for the development of
my case, and will allow me to reply more efficient to the court,
so I would appreciate all this information by <u>MARCH 15, 2004.</u>

Sincerely, *Thomas M McEach*

TM

cc: FILE
    Judge Eduardo

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS McEACHIN, Pro Se              :          CIVIL ACTION
                                     :
              Plaintiff              :
                                     :
       v.                            :
                                     :
JEFFREY BEARD, et al.                :
                                     :
              Defendants             :          No. 02-4691

## CERTIFICATE OF SERVICE

I, Thomas McEachin, plaintiff in the above civil action hereby certify that a copy of the attached letter was submitted to defendants' counsel, Kevin Bradford.

I further certify that a true and correct copy were mailed by way of placing the same in the U.S. Mail, properly addressed as below, this 6th day of March, 2004.

OFFICE OF ATTORNEY GENERAL
Kevin Bradford, Deputy Attorney
21 South 12th St., 3rd Floor
Philadelphia, PA 19107


/s/ _Thomas McEach_
Thomas McEachin, AY-8032
10745, Rt. 18/ SCI-ALBION
Albion, Pennsylvania 16401

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCEACHIN,                     :        CIVIL ACTION
                                     :
            Plaintiff                :
                                     :
        v.                           :
                                     :
JEFFREY BEARD, et al.,               :
                                     :
            Defendants               :        No. 02-04691

## COMMONWEALTH DEFENDANTS' RESPONSES AND OBJECTIONS TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS AND INFORMATION

Defendants Jeffrey A. Beard, Leslie Hatcher and Sergeant Swenski (collectively, "the Commonwealth defendants") hereby respond to Plaintiff's Request for Production of Documents and Information.

Initially, it should be noted that the Commonwealth defendants filed a motion for summary judgment in this matter on January 15, 2004, thereby complying with the Court's November 18, 2003 scheduling order setting January 19, 2004 as the deadline for the filing of any such motions. To date Plaintiff has not responded to this pending summary judgment motion.

The Commonwealth defendants generally object to Plaintiff's requests as untimely. At the time of the deadline for filing summary judgment, the Commonwealth defendants had completed Plaintiff's deposition, while the Plaintiff had engaged in no discovery. On February 6, 2004, Plaintiff filed a motion requesting an extension of time for his response to the Commonwealth defendants' motion for summary judgment.[1] On or about the same date,

_____

[1] The Court granted this motion on February 10, 2004.

**Exhibit D-3**

Plaintiff requested the production of various documents and general information from the Commonwealth defendants.

Plaintiff had ample opportunity to engage in discovery prior to the filing of the Commonwealth defendants' motion for summary judgment. Although the Court's November 18, 2003 scheduling order does not explicitly provide a discovery deadline, the obvious implication from the January 19, 2004 summary judgment deadline is that discovery should be completed by this date. However, Plaintiff requested absolutely no discovery prior to this date and provides no reason for his failure to do so. Now, for the first time, Plaintiff requests discovery at a date which is not only past the summary judgment deadline, but beyond the permissible time in which to respond to such a motion.

Despite the untimeliness of these discovery requests, and without waiving their timeliness objection, the Commonwealth defendants respond as follows:

1-3.    Objection. These documents consist of the internal operating procedures of the Pennsylvania Department of Corrections ("DOC") that are confidential and therefore privileged. The dissemination of these materials to current DOC inmates would pose serious security risks to DOC institutions and the community. The disclosing of these policies, which address the overall security of institutions and the handling and storage of inmate contraband and property, would increase the risk of escape from institutions and smuggling of drugs, weapons, and other illegal property into institutions. Furthermore, these documents are unrelated to any of Plaintiff's claims or defenses in this matter and are therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

4.    This document, DC-ADM 203, is available and has been available to all DOC inmates. However, in the interest of avoiding any further debate on the issue, the requested policy is

enclosed. Also provided is an amendment to this policy in effect at the time of the complained of incident (November 2001- December 2001).

5.      This document, DC-ADM 804, is available and has been available to all DOC inmates. Plaintiff attached portions of this policy to his response in opposition to the Commonwealth defendant's motion to dismiss in this matter. Furthermore, this policy in its entirety was attached to the Commonwealth defendants' motion to dismiss (filed and mailed to Plaintiff on September 10, 2003) and, in two separate locations, attached to the Commonwealth defendants' motion for summary judgment (filed and mailed to Plaintiff on January 15, 2004). *See* Defs.' Mot. Dismiss at Exh. D-9; Defs.' Mot. Summ. J. at Exh. D-2, Attach. Exh. McEachin 14 & Exh. D-3, Attach. A. However, in the interest of avoiding any further debate on the issue, the requested policy is enclosed.

6.      This document, DC-ADM 801, is available and has been available to all DOC inmates. However, in the interest of avoiding any further debate on the issue, the requested policy is enclosed. Also provided are the three amendments to this policy in effect at the time of the complained of incident (November 2001- December 2001).

7.      This document, DC-ADM 815, is available and has been available to all DOC inmates. Plaintiff attached portions of this policy to his response in opposition to the Commonwealth defendant's motion to dismiss in this matter. However, in the interest of avoiding any further debate on the issue, DC-ADM 815 is enclosed. The specific version Plaintiff requests, effective date April 2, 2001, does not exist. The version in effect at the time of the complained of incident (November 2001- December 2001) had an effective date of October 15, 1996 and contained 11 amendments. These are the documents hereby provided to Plaintiff. The 1996 version remained active until 2002 when it was superseded by a newer version.

8.      Objection. This request, which asks for all "procedural manuals," "training manuals," "administrative manuals," and "administrative training manual and procedure for guards" is unclear, overbroad, unrelated to any claims or defenses in this matter and therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, many, if not all, of these documents are internal operating procedures of the DOC that are confidential and therefore privileged. The dissemination of these materials to current inmates would pose serious security risks to DOC institutions and the surrounding community. The disclosing of these materials would provide inmates with the increased ability to counteract measures and techniques used to prevent escape and ensure the safety of both inmates and staff.

9.      Objection. This request, which asks for "the administrative training manual and procedures for the Hearing Examiner" is unclear, overbroad, and seeks materials that are unrelated to any claims or defenses. Furthermore, these materials are confidential for security reasons and therefore privileged. The dissemination of these materials would permit inmates to manipulate these proceedings which are essential to the sound operation of DOC facilities. It should be noted that DC-ADM 801, which is being provided to Plaintiff (see ¶ 6, above), contains the procedures for misconduct hearings.

10.     Objection. This request, which asks for any information pertaining to any other lawsuits in which the Commonwealth defendants have been named as defendants and information regarding any criminal charges ever brought against any of the Commonwealth defendants, is overbroad and it would be unduly burdensome to attempt to compile the requested information. Furthermore, this information is unrelated to any claims or defenses in this matter and is therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

11.    Objection. This request, which asks for all grievances involving the Commonwealth defendants, all staff complaints against the Commonwealth defendants, and all of the Commonwealth defendants' work evaluations from the past four years, is overbroad and it would be unduly burdensome to attempt to compile the requested information. Furthermore, this information is unrelated to any claims or defenses in this matter and is therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. It should be noted that multiple copies of the one grievance related to this action, as well as all related correspondence, have already been provided to Plaintiff via the Commonwealth defendants' motion to dismiss and motion for summary judgment. *See* Defs.' Mot. Dismiss at Exhs. D-1 to D-4; Defs.' Mot. Summ. J. at Exh. D-2, Attach. Exh. McEachin 10-13 & Exh. D-3, Attach. B, C. Requesting this material again is unreasonably duplicative.

12.    Objection. This request, which asks for all misconducts issued by defendant Swenski from 2000 to 2004, is overbroad, it would be unduly burdensome to attempt to compile the requested information, and would violate the privacy rights of the inmates that are the subject of such misconducts. Furthermore, this information is unrelated to any claims or defenses in this matter and is therefore irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. It should be noted that multiple copies of the one misconduct related to this action, as well as all related appeals and other correspondence, have already been provided to Plaintiff via the Commonwealth defendants' motion to dismiss and motion for summary judgment. *See* Defs.' Mot. Dismiss at Exhs. D-5 to D-8; Defs.' Mot. Summ. J. at Exh. D-2,

Attach. Exh. McEachin 1, 4-9. Requesting this material again is unreasonably duplicative.

GERALD J. PAPPERT
ATTORNEY GENERAL

BY: _____

Kevin R. Bradford
Deputy Attorney General
Identification No. 88576

Susan J. Forney
Chief Deputy Attorney General
Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS MCEACHIN,                    :        CIVIL ACTION
                                    :
              Plaintiff             :
                                    :
      v.                            :
                                    :
JEFFREY BEARD, et al.,              :
                                    :
              Defendants            :        No. 02-04691

## **CERTIFICATE OF SERVICE**

I, Kevin R. Bradford, Deputy Attorney General, hereby certify that a true and correct copy of the within Response to Plaintiff's Discovery Request was mailed on February 20, 2004, by first class mail, postage prepaid to:

        Thomas McEachin, # AY-8032
        State Correctional Institute
         at Albion
        10745, Route 18
        Albion, PA 16401

                                        GERALD J. PAPPERT
                                        ATTORNEY GENERAL

                        BY:      _____
                                        Kevin R. Bradford
                                        Deputy Attorney General
                                        Identification No. 88576

                                        Susan J. Forney
                                        Chief Deputy Attorney General
                                        Chief, Litigation Section

OFFICE OF ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
Telephone: (215) 560-2262



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

Gerald J. Pappert
**Attorney General**

21 S. 12th Street, 3rd Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2262
Fax: (215) 560-1031
kbradford@attorneygeneral.gov

February 20, 2004

Thomas McEachin, # AY-8032
State Correctional Institute at Albion
10745, Route 18
Albion, PA 16401

> RE:    *Thomas McEachin v. Jeffrey Beard, et al., No. 02-CV-4691*

Dear Mr. McEachin:

Please find enclosed the defendants' responses and objections to your request for the production of documents and information in connection with the above-captioned lawsuit. Note that, pursuant to Local Rule 26.1(a), discovery requests and responses thereto are not to be filed with the Court. Accordingly, the enclosed document was not filed with the Court.

Very Truly Yours,

Kevin R. Bradford
Deputy Attorney General

KRB/bjtk

Enclosure
cc:    File



COMMONWEALTH OF PENNSYLVANIA
## OFFICE OF ATTORNEY GENERAL

Gerald J. Pappert
Attorney General

21 S. 12ᵗʰ Street, 3ʳᵈ Floor
Philadelphia, PA 19107-3603
Telephone: (215) 560-2262
Fax: (215) 560-1031
kbradford@attorneygeneral.gov

March 10, 2004

Thomas McEachin, # AY-8032
State Correctional Institute at Albion
10745, Route 18
Albion, PA 16401

RE:    *Thomas McEachin v. Jeffrey Beard, et al., No. 02-CV-4691*

Dear Mr. McEachin:

I have just received your letter dated March 6, 2004, in which you request the same documents as in your January 31, 2004 letter. I am a bit confused by this new correspondence, as it contains no reference to the Commonwealth defendants' responses and objections to your January 31, 2004 document request. I mailed you this response and various documents, on behalf of the Commonwealth defendants, on February 20, 2004. Perhaps you have received this response since you mailed this letter. Of course, it is also possible that you still have not received this mailing.

Because the due date for your Motion in Opposition to the Defendants' Summary Judgment Motion is quickly approaching (April 2, 2004), I am enclosing, in its entirety, the Commonwealth defendants' responses and objections to your January 31, 2004 discovery request, including copies of the documents that are not objected to.

Very Truly Yours,

Kevin R. Bradford
Deputy Attorney General

KRB/bjtk

Enclosure
cc:    File

*Policy 6.3.1*

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
February 11, 1986

SUBJECT: INSTITUTION SECURITY

Revised Policy
Administrative Manual
Volume VI
OM-082.01

TO:     Superintendents
        Regional Directors
        Department Directors

FROM:   *Glen R. Jeffes*
        Glen R. Jeffes
        Commissioner

I. PURPOSE

The purpose of this Administrative Memorandum is to establish policies and procedures necessary to assure internal and external institution security measures in all state correctional institutions and facilities.

II. POLICY

It is the policy of the Department of Corrections to detain those individuals remanded to its custody for the period of time prescribed by law in as safe and humane manner as possible. It is also the policy to provide adequate security for the protection of the public at large, visitors to the institution, Department employes, and inmates.

III. PROCEDURE

A. Responsibility

   1. The Deputy Superintendent for Operations shall have the responsibility for implementing and monitoring all phases of institution security. In addition, all Department of Corrections employes and in particular, all institution employes, are responsible for security and should be kept constantly aware of this responsibility.

   2. The Deputy Superintendent for Operations shall appoint a Security Lieutenant who will be trained in investigative procedures and versed in the institution regulations and security procedures. Their function

**Exhibit D-4**

will be to conduct internal investigations of matters concerning the institution or facility in accordance with established policy. Where there is a suspected violation of the law, the procedures as outlined in BC-ADM 004 shall be followed.

## B. Security of Institution Grounds

1. Access to the institution

   a. Each institution shall clearly post and mark the boundary of the institution, indicating that it is Commonwealth property and that no trespassing is permitted. Also post signs that it is illegal to bring firearms, drugs, alcohol or other weapons onto institution property and that violators will be prosecuted.

   b. Entrances to the institution security compound shall be limited when possible to one pedestrian and one vehicular traffic gate. Both entrances shall be with sallyport arrangements, with electrically interlocked gates, permitting only one gate to the sallyport to be opened at one time. Vehicular traffic, particularly, should be kept to an absolute minimum, and all vehicles should be inspected, both entering and leaving. A procedure shall be established for inspecting pedestrians.

   c. The main entrance shall be designated and identified with a sign bearing the institution name and the trespassing restrictions. This entrance shall remain open at all times, except in cases of emergency, when it shall be properly manned. All other entrances to institution grounds should be considered secondary or limited access ways and should be controlled.

   d. Visitors shall be subject to frisk and strip search of their person and their personal belongings, although they shall not be permitted to take anything into the institution that is not absolutely essential to their business or approved as a part of visiting regulations. When it is necessary that strip searches are to be conducted it should be due to reasonable belief that there is an attempt to bring contraband into the institution. Lockers shall be provided for visitors' purses or other belongings which are not permitted inside the security compound.

   e. Access to the institution may be denied to anyone not abiding by the institution rules and regulations. Anyone introducing contraband into the institution and/or onto the grounds of the reservation or illegally removing anything from the institution could be prosecuted. Such individuals should be detained and the State Police contacted for instructions.

2. Personnel Searches

   a. All individuals, including employes and regular volunteers, are

2

subject to search of their persons or vehicles upon entrance or egress from a State facility or at anytime while on Commonwealth property (cross reference the Department of Corrections' Code of Ethics, section 22 and BC-ADM 203).

1) Each institution shall establish a procedure for the inspection of all visitors' and employes' brief cases, packages, books, picnic baskets, etc., carried into and out of the institution. All incoming items MUST be examined for contraband.

2) A sign which clearly indicates "ALL VISITORS AND EMPLOYEES ARE SUBJECT TO SEARCH" will be displayed at all entrances to the institution. Any person refusing to be searched will be denied entrance.

b. All non custody and confidential staff utilized for pat or strip searches shall be appropriately trained in search techniques before undertaking this assignment.

Pat or strip searches shall be conducted in an area that will afford the greatest amount of privacy avoiding embarrassment to the person being searched.

Random pat searches should occur when staff and regular volunteers are entering and leaving the facility, as necessary. ALL PERSONS ARE SUBJECT TO SEARCH AT ANY TIME WITHIN THE INSTITUTION AS WELL AS ENTERING OR LEAVING.

1) All institutions will establish a written policy and procedure for the periodic and random pat searching of all employes and regular volunteers.

At least two (2) persons will be present for all pat searches. One will be designated to conduct the actual search. The other will act as a witness and observer.

All searches shall be witnessed by a Corrections Officer III or higher.

The pat search is to be conducted by a person of the same sex as the individual being searched. At times when no management level Correction Officer Personnel is available to witness the search, other management level staff may be utilized. When none of the above management level staff are available, a Corrections Officer I, II or appropriately trained non custody staff may be utilized to conduct the actual search with a Corrections Officer II or higher present as a witness/observer. As explained, the witness/observer need not be the same sex as the person being searched.

3

All pat searches will be logged. The following information will be noted:

a) staff searched
b) staff conducting the search
c) witness/observer
d) date, time and
e) location of the search.

The Security Lieutenant or his alternate shall be responsible to the Deputy for Operations for compiling a monthly report listing all searches.

2) Strip searches shall be conducted only when there is a reasonable suspicion that the person is attempting to bring contraband into the institution/facility, illegally remove something not authorized from state property, or the person has an unauthorized item on their person within the confines of the institution/facility.

Whenever possible the Superintendent or his/her designee will be appraised prior to the strip search. If a strip search is deemed necessary, a Commissioned Officer or other management level staff shall be present.

The person conducting the search shall be Corrections Officer Personnel, C.O. III or higher. The searching person shall be the same sex as the individual being searched. When no Corrections Officer Personnel, C.O. III or higher of the same sex are available, an appropriately trained management level staff member may be utilized. The witness/observer must also be the same sex as the individual being searched.

Strip searches will be thoroughly documented in writing to the Superintendent. The following information shall be included:

a) staff searched
b) staff conducting the search
c) witness/observer
d) date
e) time
f) location of the search
g) justification for the search.

This information shall be immediately forwarded to the Superintendent for review.

3) If the person refuses to be searched, they shall be denied entrance and/or escorted from the institution grounds. If criminal activity is suspected the State Police shall be contacted for further instructions. Employes shall also be handled in

4

accordance with the employes code of ethics. Volunteers shall be denied further entrance pending a review and notification from the Superintendent.

3. General Security of Institution Grounds

In order to maintain the security of the institution grounds, it will be necessary to arrange for a system of observation by appropriate personnel on a twenty-four-hour basis. Such observation shall be for the purpose of detecting trespass, depositing of contraband for later retrieval by inmate workers and for theft of institution property. Work supervisors, detail officers or general personnel movement may provide adequate control during the workday, but special patrols will be required for all other times.

C. Perimeter Security

1. The institution wall or fence shall form the barrier and principal perimeter security device. Perimeter security may be enhanced with guard towers or with unobstructed view of the perimeter between towers or with electronic security devices. Mobile armed patrols may also be used to ensure a safe perimeter, particularly during yardout or similar conditions.

2. Parking lots, whether for personnel, visitors or official vehicles, shall be located a sufficient distance from the fence or wall to provide an unobstructed view of the fence or wall at all times. Mobile patrols, when in use, should regularly check these areas during peak usage.

D. Control Center

Each institution shall maintain a control center from which the operation of the institution is monitored and the security functions are directed. Ideally, the control center would be within vision of the entrances to the security compound and, at the same time, be able to monitor inmate movements and key security points. It is from this point that security gates are remotely controlled to sectionalize the institution in the event of an emergency.

The control center should also contain the "communication center" for telephone, radio, alarm and public address systems, and the direct line to the State Police and local fire department. This is the critical control point within the institution, and a security type pass key should be required for access. The control center should have an independent heating, ventilation and air conditioning system and maximum security perimeter construction.

E. Internal Security

1. Search or Shakedown of Institution Buildings and Grounds

   a. The Deputy Superintendent for Operation shall be responsible to see that procedures are established at each institution for the

systematic and regular security check and search or shakedown of all shops, classrooms, exercise yards, corridors and all areas where inmates congregate or have access. Once each specific area or zone is identified, the Deputy for Operations will maintain a log or checklist of the specific areas searched to ensure that each designated area is searched at least twice annually. There are areas within each instituion which require more frequent searches. These areas will be searched at the discretion of the Deputy for Operations and logged. These searches may be unannounced and could be conducted when the inmates are not present. In locations where staff is normally assigned, such staff may be present and participate in the search. Disruptions shall be kept to a minimum. Unnecessary damage to state or personal property will not be tolerated. The occasion may arise when an institution-wide or General shakedown is required such as a major disturbance or emergency situtition within the institution. In such cases the Superintendent may authorize this type of search as necessary.

b. Security inspections of inmate cells and living areas shall be conducted by institution personnel for health, safety, and security reasons. A security inspection may include observation and testing of the structural components of the cell, such as doors, windows, bars, electrical fixtures, and plumbing. Inmate's personal property shall not be searched or disturbed during the security inspection except to the extent necessary to gain access to the structural components of the cell. A record of the location of the cells inspected and the name of the staff member who conducted the inspection shall be entered in the cell block log. Presence of the inmate occupant(s) is NOT required during this type of security inspection.

c. Procedure shall be established whereby all security devices, i.e., bars, locks, windows, doors and alarms or controls are checked weekly with maintenance performed and repairs made immediately. A weekly report by the security officer to the Deputy Superintendent for Operations shall certify that all needed repairs were made.

d. Emergency generators are to be located in a secure area. Inmates should have no access to this equiment. The generators are to be tested every two weeks. Maintenance will be performed and repairs will be made immediately by the Maintenance Department. These test are to be logged and included in the Monthly Maintenance Progress Report. (See Volume VI, OM-088.01 Institution Maintenance for furthr procedural guidelines).

2. <u>Inmate Movement</u>

Inmate movement, both individually and in groups, shall be controlled to the point that the general whereabouts of each individual shall be known at all times. A pass system shall be established for individual movement from one general area to another, and accountability for each inmate by a staff member is essential.

### 3. Inmate Count

There shall be established a procedure whereby each inmate shall be counted and accounted for at least four (4) times in every twenty-four-hour period. One of the four (4) counts shall be a stand up count to the inmates to verify to the counting individual his presence and physical condition. Emergency counts or recounts shall be conducted when there is a reason to believe an inmate is missing or to insure security and control of the institution. (See Vol. VI, OM 082.05 Inmate Counts for specific procedural guidelines).

### 4. Communications

Each institution shall establish a system to enable staff to communicate through the use of radios, telephones, personal alarm devices or public address system or any combination thereof with the Control Center, command staff and specific personnel within the institution. (These systems shall be checked regularly). Through one or more alarm systems, the control center may be kept aware of problems developing in the institution, and then have a means of investigating and dispatching personnel or taking other corrective action expeditiously.

This revised Administrative Memorandum becomes effective immediately and supersedes the following directive Institution Security, Vol. VI, OM-082.01 dated October 10, 1985.

Cross reference with: Searches of Inmate and Cells, Volume II, OM-003 BC ADM 203 - Suspension of Visiting Privileges for Visitors, Volume VI, OM 082.01 - Use of X-Ray to Conduct Body Cavity Searches, Volume VI, OM-082.03 - Crimes Code Violations by Inmates Prosecution Procedures, Volume II, OM-003, BC-ADM-004 - Authorized Defensive Weapons and Equipment, Volume VI, OM-082.09

GRJ/LDH//lp

cc:   Deputy DeRamus
     F. Gillis
     D. Gearhart
     T. Otto
     K. Robinson
     R. M. Smith
     J. Patterson

# ARCHIVES

COMMONWEALTH OF PENNSYLVANIA
Department of Corrections
February 25, 1999

**SUBJECT:**   Issue of Policy:  6.3.7, "Contraband Handling and Disposition"

**TO:**   Executive Staff
Superintendents
Regional Directors
Boot Camp Commande

**FROM:**   Jeffrey A. Beard, Ph.D.
Executive Deputy Secretary

[   ] RESCINDED    [ X ] SUPERSEDED

Standards and Practices

DATE: _____  12/4/00

BY: _____  MFH

Attached please find a copy of the new 6.3.7, "Contraband Handling and Disposition". This version contains a change in title as well as many changes based upon the comments we received from the field. This policy also supersedes former policy 6.3.7, "Confiscation of Contraband Money".

One significant change is the policy and procedures manual format. The definition section is duplicated in the policy and the procedures manual. In the event an inmate requests a copy of the policy, the policy will provide clear definition of contraband and the consequences if found in possession of contraband.

Unlike the former policy which covered contraband money, this policy incorporates all types of contraband, i.e. controlled substances, perishables, prohibited items, possession of bodily fluids and hazardous waste, etc. You should find the current policy to be much more comprehensive.

Thank you and your staff for your invaluable input into this document.

Questions regarding this policy shall be directed to Major Nagy, Central Office Security Office.

JAB/kek

Attachment (6.3.7, "Contraband Handling and Disposition")

cc:  file

**Exhibit D-5**



| Policy Subject: | Policy Number: |
|---|---|
| Contraband Handling and Disposition | 6.3.7 |

| Date of Issue: | Authority | Effective Date: |
|---|---|---|
| February 25, 1999 | Martin F. Horn | May 26, 1999 |

## I. AUTHORITY

The Authority of the Secretary of Corrections to direct the operations of the Department of Corrections is established by Sections 201, 206, 506, and 901.B of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, No. 175, as amended.

## II. PURPOSE

It is the purpose of this policy to establish procedures to provide for the confiscation and disposition of contraband.[1]

## III. APPLICABILITY

This policy is applicable to facilities under the jurisdiction of the Department of Corrections, except the Community Corrections Centers.

## IV. DEFINITIONS

### A. Contraband

Any item possessed by an inmate or found within the facility that is illegal by law or expressly prohibited by those legally charged with the administration and operation of the facility or program.[2]

---

1 ACA Standard ACI 3-4184, 2-CO-3A-01, 3-ACRS-3A-13, 1-ABC-3A-17
2 ACA Glossary Definition

Contraband falls into the following categories:

1. Any weapon, gun, firearm or ammunition.

2. Any unauthorized tool, explosive, corrosive or flammable material.

3. Items not issued by or under the direct supervision of a staff member according to policy 06.03.11, " Tool Control".

4. Cash, currency, or items of value above the prescribed limits not permitted within the facility.

5. Items not issued through approved channels.

6. Items not approved for mail delivery to the inmate or not approved for a visitor to introduce.

7. State issued or personal items otherwise approved but altered from their original approved condition (e.g., altered radios, televisions, torn clothing, etc.).

8. Prohibited items passed or stolen from one inmate to another.

9. Items reasonably believed to be usable to assist in or effect an escape.

10. Personal items or valuables whose ownership cannot be determined.

11. Excessive amounts of any authorized item. Items such as televisions, typewriters, radios, jewelry, etc., which are of value must be disposed of in accordance with established state guidelines and procedures.

12. Perishables (excessive amounts), intoxicating beverages, intoxicants, or materials used in fermentation.

13. Outdated prescribed medications and non-prescribed medications (over-the-counter drugs).

14. Controlled substances as defined by the Controlled Substance, Drug, Device and Cosmetics Act, 35 Pa. C.S.A. §780-101 (April 14, 1972, P.L. 233, No. 64) and drug paraphernalia.

15. Possession of bodily fluids and hazardous wastes.

16. Any other article specifically prohibited by state or federal statue, Department policy, or regulation.

17. Items approved for special purchase in the institution commissary will not be considered contraband.

## V.    POLICY

It is the policy of the Department of Corrections to deal with the handling and disposition of contraband within its facilities.[3] This policy will ensure procedures are in place for the confiscation and proper disposition of contraband that is introduced, found, or sent into a correctional facility.

## VI.    PROCEDURE

### A.    General Provisions

1. Possession of contraband by an inmate can result in misconduct in accordance with the provisions of DC-ADM 801, "Inmate Disciplinary and Restricted Housing Procedures".

2. Contraband of a serious nature will be brought to the attention of the Shift Commander.

3. A misconduct(s) will be issued at the discretion of the Officer or employee who finds the contraband or after review by the Shift Commander. All sanctions imposed are contained in DC-ADM 801, "Inmate Disciplinary and Restricted Housing Procedures".

4. Introduction of contraband money and other types of negotiable instruments, controlled substances, weapons, and implements of escape, is a criminal offense under 18 Pa. C.S.A. 5123(b).

5. Money that comes into an institution in a manner that was intended to conceal it from the mailroom inspection is contraband.

6. Money allegedly found by an inmate in a state correctional facility and voluntarily turned into institutional officials **is not** considered contraband and no misconduct will be written. Found monies shall be confiscated and placed in the Inmate General Welfare Fund.

7. Money utilized by visitors for vending machines purchases shall not be considered contraband, provided the money remains in the possession of the visitor.

---

3 ACA Standard ACI 3-4436

8. All controlled substance contraband discovered will be documented on a DC-436 "Receipt for Property" form. This document will be utilized to establish the Chain of Custody for the contraband obtained.

9. Found controlled substances where ownership is established, requires notification to the Pennsylvania State Police (PSP) to initiate criminal proceedings. The controlled substance will be retained by the PSP as evidence.

10. Procedures for the confiscation and disposition of controlled substances are contained in the procedure manual for this policy.

## VII.  SUSPENSION DURING EMERGENCY

In an emergency or extended disruption of normal institutional operation, the Secretary, or designee may suspend any provision or section of this policy, for a specific period.

## VIII.  RIGHTS UNDER THE POLICY

This policy does not create rights for any person nor should it be interpreted or implied in such a manner as to abridge the rights of any individual. This policy should be interpreted to have sufficient flexibility so as to be consistent with law and permit the accomplishments and purpose(s) of the policies of the Department of Corrections.

## IX.  Release of Information and Distribution of Policy

### A.  Release of Information

1. Policy

This policy document is public information and may be released to members of the public, staff, legislative, judicial, law enforcement and correctional agencies and/or inmates upon request.

2.      Procedures Manual (if applicable)

The procedures manual for this policy is <u>not public information</u> and shall not be released in its entirety or in part, without the prior approval of the Secretary of Corrections or designee.  The manual or parts thereof, may be released to any Department of Corrections employee on an as needed basis.

## B.    Distribution of Policy

1.      **General Distribution**

The Department of Corrections policy and procedures manual (when applicable) shall be distributed to the members of the Central Office Executive Staff, all Facility Managers, and Community Corrections Regional Directors on a routine basis. Distribution to other individuals and/or agencies is subject to the approval of the Secretary of Corrections or designee.

2.      **Distribution to Staff**

It is the responsibility of those individuals receiving policies and procedures, as indicated in the "General Distribution" section above, to ensure that each employee expected or required to perform the necessary procedures/duties is issued a copy of the policy and procedures.

## X.    Superseded Policy and Cross References

### A.    Superseded Policy

1.      Department Policy

This document supersedes the 6.3.7, "Confiscation of Contraband Money", effective April 5, 1982, by former Commissioner Ronald Marks.

2.      Facility Policy and Procedures

This document supersedes all facility policy and procedures on this subject.

**B.** **Cross References**

    1.   Administrative Manuals

        a.  DC-ADM 203, Searches of Inmates and Cells

        b.  DC-ADM 801, Inmate Disciplinary and Restricted Housing Procedures

        c.  DC-ADM 803, Inmate Mail Privileges

        d.  3.2.1, Inmate General Welfare Fund Operation

        e.  3.2.2, Inmate General Welfare Fund Cash Management

        f.  6.3.1, Institution Security

        g.  6.3.13, Intelligence Management

        h.  6.7.9, Reporting of Extraordinary Occurrences

    2.   Accreditation Standards

        a.  Administration of Correctional Agencies: 2-CO-3A-01

        b.  Adult Correctional Institutions: 3-4184, 3-4435, 3-4436

        c.  Adult Community Residential Services: 3-ACRS-3A-13

        d.  Adult Correctional Boot Camp Programs: 1-ABC-3A-17

        e.  Correctional Training Academies: None

Policy 6.8.2.

OA·501 12·57

2-457

COMMONWEALTH OF PENNSYLVANIA

December 11, 1981

VOLUME VI
OM-083.03

SUBJECT: Processing of Inmate Personal Property

TO:     Superintendents
        Central Office Directors
        Regional Directors

FROM    Ronald J. Marks
        Commissioner

## I. PURPOSE

This Administrative Memorandum is to promulgate procedures for handling and disposition of inmate personal property at the following times: 1) Initial Reception; 2) Transfer; 3) ATA; 4) Release; 5) Miscellaneous.

## II. SCOPE

Procedures promulgated in this Administrative Memorandum shall be applicable to all correctional facilities under the jurisdiction of the Bureau of Correction.

## III. DEFINITIONS

A. Initial reception shall mean any time an inmate enters an institution from another jurisdiction, whether it is the first time or subsequent entry, at which time, all items possessed by the inmate shall be inventoried.

B. Intra-institution transfer shall mean transfer from a Diagnostic-Classification Center or reception unit to the general population of a parent institution, or from one area to another in the same institution.

C. Inter-institution transfer shall mean transfer from one Bureau of Correction facility to another on a permanent or temporary basis.

D. Extra-institution transfer shall mean transfer from a Bureau of Correction facility to a county facility, interstate transfer or to a mental hospital.

E. Special unit transfer shall mean transfer to an institution medical unit, administrative or disciplinary custody unit, etc.

**Exhibit D-6**

- 2 -

Processing of
Inmate Personal Property

December 11, 1981

F. Temporary absence shall mean ATA's and other occasions when the
inmate is expected to return within a reasonable period of time,
such as transfer to a local hospital, escape, furlough, etc.

G. Storage removal shall mean removal of items previously held by
the institution and given to the inmate or shipped as the inmate
directs.

H. Release shall mean the lawful release of the inmate from the juris-
diction of the Bureau of Correction.

IV. PROCEDURES

A. Initial Reception. At the time of reception, the property officer,
in the presence of the inmate, shall inventory all personal effects,
using form JBC-153-A, Inmate Personal Property Inventory. The
quantity of each item shall be indicated along with the method of
disposition. Items not printed on the form shall be listed in the
blank spaces. Special items shall include brand names, description
and serial number, if applicable. Insofar as reasonable, such
special items shall be permanently marked with the inmate's name
and number in an inconspicuous but accessible location. It is
suggested that an engraving tool be used for this purpose.

All items to be retained by the inmate shall be thoroughly inspected
for contraband and to assure that they meet sanitary and safety
requirements and are compatible with existing directives. Inspection
of electrical or mechanical items shall be accomplished by personnel
knowledgeable in such equipment to preclude inadvertent damage.

The inmate shall provide the name and address of the person to whom
the institution should mail those items marked "S".

Items marked "D" shall be destroyed.

Items marked "R" shall be retained by the inmate.

Items marked "H" shall be placed in appropriate institutional storage.

A JBC-130-B, Cash Transaction Receipt, shall be issued to the inmate
for monies in his possession at the time of reception and the money
deposited in the inmate's account.

Upon completion of the above procedures, the property officer shall
sign the form, indicate the institution and date, and shall have
the inmate sign that he has been advised of the disposition of his
property. Copy #4 shall be given to the inmate by the property
officer. Copies 1, 2 and 3, unburst, shall be forwarded to the

- 3 -

Processing of
Inmate Personal Property                              December 11, 1981

mail room with those items to be shipped. At the time of shipping,
the mail room employe shall sign and date the form and return it to
the records office for final distribution of the remaining copies.

B.  **Intra-institution Transfer.** In the case of an intra-institution
transfer, the inmate shall be responsible for the physical movement
of his property to the assigned location.

C.  **Inter-institution Transfer.** In the case of an inter-institution
transfer, the property officer, using form JBC-153-A, shall, in the
presence of the inmate, inventory and pack all items, and shall sign
the form, indicating the institution and date. The inmate shall
also sign the form. Copy #4 shall be given to the inmate. Copy
#3 shall be retained by the transferring institution. Copies 1 and
2, unburst, shall accompany the property to the receiving institution.

At the receiving institution, the property officer, in the presence
of the inmate, shall unpack and compare the items with the inventory.
The property officer and the inmate shall sign the form, indicating
that all items have been received. Copy #2 shall be given to the
inmate. Copy #1 shall be forwarded to the records office for file.

In the case of a temporary inter-institution transfer, two forms
may be needed: One for items retained at the transferring institution
and one for items to accompany the inmate.

D.  **Extra-institutional Transfer.** In the case of a transfer of an inmate
to a county facility or an interstate transfer, procedures shall be
the same as in Paragraph "C" above.

E.  **Special Unit Transfer.** In the case of a transfer to a special unit
within the institution, items permitted to be retained by the inmate
shall be handled as in the case of intra-institution transfer. Items
not permitted to be retained shall be properly inventoried and packed
for storage if the cell is to be vacated.

F.  **Temporary Absence.** In the case of a temporary absence, those items
accompanying the inmate shall be listed on Form JBC-153-A and
JBC-159-B, Receipt of Personal Effects, shall be completed and signed.
Those items to be held by the institution shall be properly inven-
toried, using the JBC-153-A, packed and placed in storage if the
cell is to be vacated or if the absence is expected to be for a
substantial period of time.

G.  **Storage.** In cases where an inmate requests items presently held in
storage and such items are permissable under current Bureau of
Correction policy, a JBC-159-B shall be completed and signed by the
property officer and inmate.

If an inmate requests that an item be shipped, a form JBC-153-A
shall be used. If the item is in storage, a JBC-159-B must be
used also.

- 4 -

Processing of
Inmate Personal Property

December 11, 1981

In cases where an inmate requests that an item(s) in his possession be placed in storage, a JBC-153-A shall be completed and signed by the property officer and the inmate.

H. **Releases.** In the case of a release of an inmate from the jurisdiction of the Bureau of Correction, all items shall be inventoried and a JBC-159-B completed and signed by the property officer and the inmate. A JBC-153-A may be used and attached to the JBC-159-B.

I. **Unclaimed Property.** See related memorandum entitled "Unclaimed Property of Inmates, Former Inmates and Escapees."

## V. EXCEPTIONS

In those cases where the inmate cannot be physically present during inventory procedures, the property officer and another employe shall process the property and both shall sign the forms. In those cases where an inmate refuses to sign the appropriate forms, two employes shall process the property and certify that the inventory is correct. A notation shall be made that the inmate refused to sign the forms.

## VI. RESPONSIBILITY

Property in the possession of the inmate is his sole responsibility. If the inmate does not want to take the risk for the loss of personal property, he should make arrangements for it to be sent home or stored in a secure place.

If it becomes necessary to take possession of an inmate's personal property, this property then becomes the responsibility of the agency to repair or replace if damaged, lost or stolen.

This Administrative Memorandum shall supersede all previous memoranda or other communiques on this subject and shall be effective immediately.

RJM/k

cc: Deputy DeRamus
     L. Smith, S. Sturgis
     D. Gearhart, L. Hewitt
     File, RJM

CROSS REFERENCED IN
Vol VII OM 102, SECTION
II Supplement II.
IN Process of being
Revised. 4/8/86.

OA-501 12-67

COMMONWEALTH OF PENNSYLVANIA

December 11, 1981
VOLUME VI
OM-083.03

SUBJECT: Unclaimed Property of Inmates,
Former Inmates and Escapees

TO:   Superintendents
      Central Office Directors
      Regional Directors

FROM   Ronald J. Marks        *Ronald J. Marks*
       Commissioner

I.   PURPOSE

It is the purpose of this Administrative Memorandum to promulgate policies
and procedures for the unclaimed property of inmates, former inmates and
escapees.

II.   SCOPE

Procedures promulgated in this Administrative Memorandum shall be appli-
cable to all correctional facilities under the jurisdiction of the
Bureau of Correction.

III.   PROCEDURES

Reference is made to Administrative Memorandum - "Processing of Inmate
Personal Property".

A.   All inmate property will be packed in accordance with procedures
     promulgated in the above-cited document.  Responsible personnel -
     as indicated.

B.   In the case of escapes, the personal property of the inmate shall
     be examined prior to packing to see if there might be some indica-
     tion as to his whereabouts.  Responsible personnel - Security
     Officer and Property Officer.

C.   All unclaimed property shall be retained for a minimum of six months,
     at which time, these procedures shall be initiated.  In the case of
     escape, time will be computed from the date of escape.  In case of
     other releases, time will be computed from the date of receipt of
     official notification from court.  Responsible personnel - Records
     Officer.

D.   If the whereabouts of the individual is known, e.g., in custody of
     another jurisdiction, a registered, return receipt requested,
     letter shall be forward to him (with a carbon copy to the adminis-
     trator of the institution) indicating that we have the property and
     will forward it, at his expense, to an address of his choice.  He
     should be advised that if no response is received within 30 days,

- 2 -

Unclaimed Property                                    December 11, 1981

      or if he chooses not to have the property forwarded, it will be turned over to the Escheats Section of the Pennsylvania Department of Revenue for disposal. A copy of the letter and receipt shall be filed in the inmate record jacket, to be kept the maximum period of time, in accordance with the records retention schedule. Responsible personnel - Records Officer.

E.  If the whereabouts of the individual is unknown, a registered, return receipt requested, letter shall be forwarded to him at the last known address, indicating that we have the property and will forward it, at his expense, to an address of his choice. He should be advised that if no response is received within 30 days, or if he chooses not to have the property forwarded, it will be turned over to the Escheats Section of the Pennsylvania Department of Revenue. A copy of the letter and receipt shall be filed in the inmate record jacket and retained for the maximum period of time, in accordance with the records retention schedule. Responsible personnel - Records Officer.

F.  If his whereabouts is not known and no response is received from the letter described in Paragraphs D and E above, the property shall be turned over to the Escheats Section. All property to be turned over to the Escheats Section shall be inventoried, using Form JBC 153-A, with the following modifications:

    1.  Check the "Other" block at the top of the form and add "Escheats".

    2.  In the bottom right-hand block, add "According to law to the Escheats Division Officer."

    3.  Block out "Property Officer" and add "Escheats Section Officer."

       Responsible personnel - Business Office.

G.  Property held in storage or the institution safe, such as rings, watches, legal documents, will be added to the inventory. Responsible personnel - Business Office.

H.  Contact via registered mail, return receipt requested, shall be made with the joint owner in the case of items indicating joint ownership, such as savings bonds, stock certificates, etc. If no response is received, such items are escheatable and shall be added to the inventory. A copy of the letter and receipt shall be filed in the inmate record jacket and retained for the maximum period of time, in accordance with the records retention schedule. Responsible personnel - Business Office.

I.  Monies in the inmate's account will be transmitted via a check to the Escheats Section, Department of Revenue. The check number and amount shall be listed on the inventory. Responsible personnel - Business Office.

- 3 -

Unclaimed Property                                    December 11, 1981


J.  Escheats Section personnel will sign the JBC-153-A, as indicated, and
    be furnished two (2) copies. The other copies shall be filed in the
    inmate record jacket and retained the maximum period of time, in accor-
    dance with the records retention schedule.

K.  Arrangements for the Escheats procedure shall be made with:

                        Department of Revenue
                        Escheats Section
                        Strawberry Square
                        Harrisburg, PA  17120

                        Telephone No.  717-787-6171
                        Network           8-447-6171

IV.  This memorandum if effective immediately and supersedes all previous
     memos on the subject.


RJM/k

cc: Deputy DeRamus
    L. Smith
    D. Gearhart
    L. Hewitt
    S. Sturgis
    File, RJM